## *In re* GRIMLEY, Petitioner.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 761. Submitted October 21, 1890. — Decided November 17, 1890.

Civil Courts may inquire, under a writ of *habeas corpus*, into the jurisdiction of the court over the party condemned, but cannot inquire into or correct errors in its proceedings.

An enlistment is a contract between the soldier and the government which involves, like marriage, a change in his status which cannot be thrown off by him at his will, although he may violate his contract.

An enlisted soldier cannot avoid a charge of desertion by showing that, at the time when he voluntarily enlisted, he had passed the age at which the law allows enlisting officers to enlist recruits.

A recruit who voluntarily goes before a recruiting officer, expresses his desire to enlist, undergoes a physical examination, is accepted by the officer, takes the oath of allegiance before him, signs the clothing rolls, and is placed in charge of a sergeant, has thereby enlisted and has become a soldier, in the army of the United States, although the articles of war have not been read to him.

*Tyler* v. *Pomeroy*, 8 Allen, 480, distinguished from this case.

HABEAS CORPUS. The prisoner, a recruit in the army of the United States, being discharged, the United States took this appeal. The objections to the validity of the enlistment are stated in the report of the argument of the appellee's counsel. The statutes regulating enlistments will be found in the opinion of the court.

*Mr. Solicitor General* for the United States, appellants.

*Mr. Henry W. Putnam* and *Mr. William H. Brown* for the petitioner, appellee.

I. Grimley's alleged enlistment, on February 18, 1888, was void. He was, at the time, over forty years of age, and therefore above the maximum age for enlistment. *Seavey* v. *Seymour*, 3 Cliff. 439, 445, 447; *In re McDonald*, 1 Lowell, 100; *In re Davison*, 21 Fed. Rep. 618; *In re Hearn*, 32 Fed. Rep.

141; *In re Lawler*, 40 Fed. Rep. 233, 235; *Goodson* v. *Caldwell*, 2 Winston (N. C.) 135.

The reasons for holding void an enlistment, like the present, above the maximum age are even stronger than in the case of one below the minimum ; for the latter is a defect which time would speedily remedy, while time would only aggravate the former, by rendering the recruit constantly less "effective" and less "able-bodied." The reason and importance of the rule as to the maximum age are emphasized by the exception in sect. 1116, that "this limitation as to the age shall not apply to soldiers reënlisting," — thus negatively, as well as affirmatively, forbidding the enlistment of new men over thirty-five ; and also by the fact that while the minimum age has been reduced to sixteen, even in time of peace, and the minimum height of five feet six inches is abolished (Stat. 1838, c. 162, § 30), the maximum age has never been raised above thirty-five, except temporarily in the War of 1812, when it was raised first to forty-five, and then to fifty, and was promptly restored in 1815 to thirty-five years, where it has remained since.

The declaration of the petitioner at the rendezvous as to his age is not conclusive as against the actual fact, and is immaterial if he is not in fact within the statutory age. He cannot by any declarations of his own make himself a soldier if the law says he cannot be one. *In re McDonald*, 1 Lowell, 100; *Seavey* v. *Seymour*, 3 Cliff. 439, 447. An oath as to age is not, and never has been, made by statute conclusive that a man is within the maximum.

The military authorities cannot waive the statutory maximum established by Congress, either on account of the recruit's perjury as to his age or for any other reason whatever. The legislative department, or officers expressly thereunto authorized by statute, can alone do that. Winthrop's Military Law, 769, 770. The remark of the court in *United States* v. *Wingall*, 5 Hill, 16, that an illegality can be waived by the Government is *obiter dictum*, the enlistment in that case being held not to be illegal.

Even if the government officers can waive the maximum of

age, they had already waived the enlistment itself quite as effectually by telling his mother that he need not return, and might go to work. If the officers could do the one, they could do the other, and the inchoate enlistment was waived first.

II. Independently of Grimley's age, the proceedings at the rendezvous did not constitute a valid enlistment so completed as to exchange his civil status for the military status. *United States* v. *Thompson*, 2 Sprague, 103; *Tyler* v. *Pomeroy*, 8 Allen, 480, 485, 486; *Bamfield* v. *Abbot*, 9 Law Rep. 510.

He was entitled to be allowed time to consider the subject until his mind was fully made up before the oath was administered to him, and his mind could not be intelligently made up within the meaning of the law, until all the Articles of War had been read to him, so that he could know just what his new status was. Several days out of the atmosphere of the rendezvous are deemed a reasonable time to think it over. The oath administered to Grimley was, therefore, ineffectual in law to make him a soldier. The reading of the Articles of War must *precede* the taking of the oath. "These rules and articles shall be read . . . and he shall *thereupon* take an oath, etc.," the reading being thus expressly made a condition precedent to the valid administration of the oath. It does not appear that articles 47 or 103, or any of the other Articles of War, were intelligibly explained, or even read to him at all; and it is evident that the nature of the oath, or even of oaths in general, was not explained to him during the fifteen minutes or so that he was at the rendezvous in all.

Under such circumstances Grimley evidently still had in law a *locus penitentiæ* open to him. The mere administration of the oath, even if in compliance with the law, does not make the man a soldier. *Seavey* v. *Seymour*, 3 Cliff. 439.

MR. JUSTICE BREWER delivered the opinion of the court.

John Grimley, the appellee, was, on the 28th day of May, 1888, found guilty by a court-martial of the crime of desertion, and sentenced to be imprisoned six months. While serving out this sentence at Fort Warren, Massachusetts, he sued out

a writ of *habeas corpus* from the District Court of the United States for the District of Massachusetts. That court, on June 25, 1888, discharged him from custody. The United 'States appealed to the Circuit Court for said District, which, on the 27th day of February, 1889, affirmed the decree of the District Court. 38 Fed. Rep. 84. From this decision the United States has brought this appeal.

The Circuit Court found that the petitioner was forty years of age at the time of his alleged enlistment, although he rep-resented himself to be but twenty-eight; and, under section 1116 of the Revised Statutes, ruled that the enlistment was void, and that Grimley never became a soldier, and was not subject to the jurisdiction of the court-martial. That section reads: "Recruits enlisting in the Army must be effective and able-bodied men, and between the ages of sixteen and thirty-five years, at the time of their enlistment." It cannot be doubted that the civil courts may in any case inquire into the jurisdiction of a court-martial, and if it appears that the party condemned was not amenable to its jurisdiction, may discharge him from the sentence. And, on the other hand, it is equally clear that by *habeas corpus* the civil courts exercise no super-visory or correcting power over the proceedings of a court-martial; and that no mere errors in their proceedings are open to consideration. The single inquiry, the test, is jurisdiction. That being established, the *habeas corpus* must be denied and the petitioner remanded. That wanting, it must be sustained and the petitioner discharged. If Grimley was an enlisted soldier he was amenable to the jurisdiction of the court-martial; and the principal question, the one ruled against the government, is whether Grimley's enlistment was void by reason of the fact that he was over thirty-five years of age. This case involves a matter of contractual relation between the parties; and the law of contracts, as applicable thereto, is worthy of notice. The government, as contracting party, offers contract and service. Grimley accepts such contract declaring that he possesses all the qualifications prescribed in the government's offer. The contract is duly signed. Grimley has made an untrue statement in regard to his qualifica-

tions. The government makes no objection because of the
untruth. The qualification is one for the benefit of the gov-
ernment, one of the contracting parties. Who can take ad-
vantage of Grimley's lack of qualification? Obviously only
the party for whose benefit it was inserted. Such is the ordi-
nary law of contracts. Suppose "A," an individual, were to
offer to enter into contract with persons of Anglo-Saxon
descent, and "B," representing that he is of such descent,
accepts the offer and enters into contract; can he, there-
after, "A" making no objection, repudiate the contract on
the ground that he is not of Anglo-Saxon descent? "A"
has prescribed the terms. He contracts with "B" upon
the strength of his representations that he comes within
those terms. Can "B," thereafter, plead his disability in
avoidance of the contract? On the other hand, suppose
for any reason it could be contended that the proviso as to
age was for the benefit of the party enlisting, is Grimley in
any better position? The matter of age is merely incidental,
and not of the substance of the contract; and can a party by
false representations as to such incidental matter obtain a con-
tract, and thereafter disown and repudiate its obligations on
the simple ground that the fact in reference to this incidental
matter was contrary to his representations? May he utter a
falsehood to acquire a contract, and plead the truth to avoid
it, when the matter in respect to which the falsehood is stated
is for his benefit? It must be noted here, that in the present
contract is involved no matter of duress, imposition, igno-
rance or intoxication. Grimley was sober, and of his own
volition went to the recruiting office and enlisted. There was
no compulsion, no solicitation, no misrepresentation. A man
of mature years, he entered freely into the contract.

But in this transaction something more is involved than the
making of a contract, whose breach exposes to an action for
damages. Enlistment is a contract; but it is one of those
contracts which changes the status; and, where that is changed,
no breach of the contract destroys the new status or relieves
from the obligations which its existence imposes. Marriage is
a contract; but it is one which creates a status. Its contract

obligations are mutual faithfulness; but a breach of those obligations does not destroy the status or change the relation of the parties to each other. . The parties remain husband and wife, no matter what their conduct to each other — no matter how great their disregard of marital obligations. It is true that courts have power, under the statutes of most States, to terminate those contract obligations, and put an end to the marital relations. But this is never done at the instance of the wrongdoer. The injured party, and the injured party alone, can obtain relief and a change of status by judicial action. So, also, a foreigner by naturalization enters into new obligations. More than that, he thereby changes his status; he ceases to be an alien, and becomes a citizen, and when that change is once accomplished, no disloyalty on his part, no breach of the obligations of citizenship, of itself, destroys his citizenship. In other words, it is a general rule accompanying a change of status, that when once accomplished it is not destroyed by the mere misconduct of one of the parties, and the guilty party cannot plead his own wrong as working a termination and destruction thereof. Especially is he debarred from pleading the existence of facts personal to himself, existing before the change of status, the entrance into new relations, which would have excused him from entering into those relations and making the change, or if disclosed to the other party, would have led it to decline admission into the relation, or consent to the change.

By enlistment the citizen becomes a soldier. His relations to the State and the public are changed. He acquires a new status, with correlative rights and duties; and although he may violate his contract obligations, his status as a soldier is unchanged. He cannot of his own volition throw off the garments he has once put on, nor can he, the State not objecting, renounce his relations and destroy his status on the plea that, if he had disclosed truthfully the facts, the other party, the State, would not have entered into the new relations with him, or permitted him to change his status. Of course these considerations may not apply where there is insanity, idiocy, infancy, or any other disability which, in its nature, disables a

party from changing his status or entering into new relations. But where a party is *sui juris*, without any disability to enter into the new relations, the rule generally applies as stated. A naturalized citizen would not be permitted, as a defence to a charge of treason, to say that he had acquired his citizenship through perjury, that he had not been a resident of the United States for five years, or within the State or Territory where he was naturalized one year, or that he was not a man of good moral character, or that he was not attached to the Constitution. No more can an enlisted soldier avoid a charge of desertion, and escape the consequences of such act, by proof that he was over age at the time of enlistment, or that he was not able-bodied, or that he had been convicted of a felony, or that before his enlistment he had been a deserter from the military service of the United States. These are matters which do not inhere in the substance of the contract, do not prevent a change of status, do not render the new relations assumed absolutely void. And in the case of a soldier, these considerations become of vast public importance. While our regular army is small compared with those of European nations, yet its vigor and efficiency are equally important. An army is not a deliberative body. It is the executive arm. Its law is that of obedience. No question can be left open as to the right to command in the officer, or the duty of obedience in the soldier. Vigor and efficiency on the part of the officer and confidence among the soldiers in one another are impaired if any question be left open as to their attitude to each other. So, unless there be in the nature of things some inherent vice in the existence of the relation, or natural wrong in the manner in which it was established, public policy requires that it should not be disturbed. Now, there is no inherent vice in the military service of a man forty years of age. The age of thirty-five, as prescribed in the statute, is one of convenience merely. The government has the right to the military service of all its able-bodied citizens; and may, when emergency arises, justly exact that service from all. And if for its own convenience, and with a view to the selection of the best material, it has fixed the age at thirty-five, it is a matter

which in any given case it may waive; and it does not lie in the mouth of any one above that age, on that account alone, to demand release from an obligation voluntarily assumed, and discharge from a service voluntarily entered into. The government, and the government alone, is the party to the transaction that can raise objections on that ground. We conclude, therefore, that the age of the petitioner was no ground for his discharge.

A minor question arises on these facts as to whether the petitioner was in fact enlisted. It appears that on Saturday, February 18, 1888, the petitioner entered the recruiting rendezvous in Boston, and expressed a desire to enlist. He underwent a physical examination. He took the oath of allegiance before the recruiting officer, signed the clothing rolls, and was placed in charge of the sergeant. The latter took him to the clothing-room, and selected for his uniform a cap, trousers, blanket, shirt and pair of stockings, and laid them before him. He put none of these articles on except the cap, and that in a few minutes he took off. He then asked permission to go away and see his friends, and the sergeant told him to go, and be back on Monday. He went away in his citizens' clothes, returned to his mother's house and told her what he had done. She was very much grieved, and after some conversation with him went to the recruiting office, and finding three men there told them her errand, and was advised substantially that Grimley need not come back, and might go to work. Who these men were is not disclosed. On the strength of that he did not return, but went off and engaged in service as a coachman. He was arrested as a deserter on May 16, 1888, brought before a court-martial and found guilty, as heretofore stated. The oath of allegiance which he took was as follows:

"The United States of America.

"State of Massachusetts, )
City or Town of Boston,   ) *ss:*

"I, John Grimley, born in Armagh, in the State of Ireland, aged twenty-eight years and —— months, and by occupation

a groom, do hereby acknowledge to have voluntarily enlisted, this eighteenth day of February, 1888, as a soldier in the Army of the United States of America, for the period of five years, unless sooner discharged by proper authority; and do also agree to accept from the United States such bounty, pay, rations and clothing as are or may be established by law. And I do solemnly swear (or affirm) that I will bear true faith and allegiance to the United States of America, and that I will serve them honestly and faithfully against all their enemies whomsoever; and that I will obey the orders of the President of the United States, and the orders of the officers appointed over me, according to the rules and articles of war.

"JOHN GRIMLEY.   [Seal.]

"Subscribed and duly sworn to before me this 18th day of February, A.D. 1888.

"JAMES MILLER<br>"Captain, 2d Infantry, Recruiting Officer."

The question presented is, whether the petitioner had, in fact, enlisted and become a soldier. It will be noticed that in this oath of allegiance is an acknowledgment that he had enlisted, and that it was not an agreement to enlist. In this respect this case differs from that of *Tyler* v. *Pomeroy*, 8 Allen, 480, in which the plaintiff, with others, had signed a paper by which, in terms they agreed to serve for a period of three years "from the date of our being mustered into the United States' service." In that case, Mr. Justice Gray, then a member of the Supreme Court of Massachusetts, in an opinion reviewing all the authorities in England and in this country, drew a distinction between an agreement to enlist, which, if broken, simply gives a right of action for damages, and an enlistment, which changes the status of the party, transfers him from civil to military life, and renders him amenable to military jurisdiction. Section 1342 of the Revised Statutes provides that the Army of the United States shall be governed by certain rules and articles thereafter stated. Article 2 provides: "These rules and articles shall be read to every enlisted man, at the time of, or within six days after, his enlistment,

and he shall thereupon take an oath or affirmation," &c. Obviously the oath is the final act in the matter of enlistment. Article 47, respecting desertion, reads: "Any officer or soldier who, having received pay, or having been duly enlisted in the service of the United States, deserts the same," &c. By this, either receipt of pay or enlistment determines the status; and after enlistment the party becomes amenable to military jurisdiction, although no actual service may have been rendered and no pay received.

It is insisted that the Articles of War were not read to him; but that is not a prerequisite. "Within six days after" is the statute. The reading of the one hundred and twenty-eight articles, many of which do not concern the duty of a soldier, is not essential to his enlistment. Paragraph No. 766 of the Army Regulations of 1881 is as follows: "The forms of declaration, and of consent in the case of a minor, having been signed and witnessed, the recruit will then be duly examined by the recruiting officer and surgeon, if one be present, and, if accepted, the 47th and 103d Articles of War will be read to him, after which he will be allowed time to consider the subject until his mind appears to be fully made up before the oath is administered to him." That this was complied with is probable, from the testimony.

The petitioner testifies that something was read to him out of a book, though he is unable to say what it was; and Captain Miller, the recruiting officer, testifies that he is under the impression, though not positive, that he read the 47th article to him. He also says that he had quite a conversation with him, inquiring as to his past life and why he had decided to enlist. No solicitations were used, no advantage taken of him. The enlistment was a deliberate act. No specified amount of time for the purpose of consideration is prescribed by the regulation. The oath is not to be administered until his mind is fully made up, and that is all that is required. There is nothing in the circumstances surrounding the enlistment to vitiate the transaction. We conclude, therefore, upon the whole case, that the age of the petitioner was no bar to his enlistment of which he can take advantage; that the taking

of the oath of allegiance is the pivotal fact which changes the status from that of civilian to that of soldier; that the enlistment was a deliberate act on the part of the petitioner; and that the circumstances surrounding it were not such as would enable him, of his own volition, to ignore it, or justify a court in setting it aside.

The judgment of the Circuit Court will be ·

*Reversed and the case remanded with instructions to reverse the decree of the District Court and take such further proceedings as shall be in conformity with the opinion of this court.*