Howry, J.,
delivered the opinion of the court:
The demand in this case is for arrearages of soldier’s pay and allowance under an enlistment in the mounted service of the Army. The amount claimed is $858.25 for thirty-sis months’ pay, including a small sum alleged to have been paid by the jietitioner to the Government under protest; and for allowances in rations and clothing after making deductions for a period of desertion on account of pay forfeited by the sentence of a court-martial, and deducting also for this period for forfeitures on account of rations and clothing according to the sentence.
The petition alleges the enlistment of the claimant at Boston, Mass., on February 18, 1888, permission on the same day from the military authorities to return home, and upon the expiration of three days’ leave of absence failure on the part of the petitioner to return to duty because, as he thought, the enlistment was canceled. Subsequently, in the month of May following, as shown by the petition, the petitioner was arrested by the military authorities and confined at Fort Warren, where he was tried by court-martial for desertion, found guilty, sentenced to be confined at hard labor for six months, and to forfeit $10 of each month’s pay and one-half of his clothing money *289 for tbe same period. The proceedings, findings, and sentence of the court-martial were afterwards approved by the Commanding General, with directions for the execution of the sentence. While undergoing this sentence the petitioner sued out a writ of habeas, corpus from the District Court of the United States for the district of Massachusetts, alleging the invalidity of the enlistment and claiming exemption from the military service, upon the hearing of which petitioner was discharged from the custody of the military authorities. Upon the appeal of the Government to the Circuit Court this judgment of the District Court was affirmed. (38 Fed. Rep., 84.) Upon further appeal of the Government, however, the judgment of the Circuit Court was reversed by the Supreme Court of the United States and the petitioner held to have been an enlisted soldier and amenable to the jurisdiction of the military authorities, for reasons set forth in the opinion of the court. (In re Grimley, 137 U. S., 147.) Whereupon claimant was returned to military custody at Fort Warren to undergo the sentence of the court-martial and serve under his enlistment as a soldier, remaining until February 14,1891, at which time the unexpired portion of the sentence was remitted at the instance of the petitioner and claimant discharged from the service by order of the Secretary of War “on condition that he make good all indebtedness by him to the United States.”
The question presented for determination is whether the claimant is entitled to his pay as an enlisted'man during the time of his attendance on the courts of the United States while prosecuting his supposed rights under the writ of habeas corpus with reference to the terms of the previous sentence of the court-martial, his privileges under the enlistment, and the circumstances attending his discharge from the service. The right to pay and allowances, it will thus be seen, is not for active service, but upon the status of the claimant as a soldier during the time mentioned, and his supposed right to compensation for the time of the enlistment subsequent to the action of the court-martial which imposed the sentence for the desertion, and for the compensation not declared forfeited by the military court.
In the prosecution of his rights under the writ petitioner was in attendance upon the courts of the United States as a *290 litigant, but on bail all the time, and free to come and go as he pleased. He was not only seeking by virtue of the writ of habeas corpus to escape enlistment, but incidental to this he was likewise endeavoring to evade the punishment imposed by the military court for his desertion from the service. Having the protection of the civil authorities during this time he was evading the service he had contracted to perform as a soldier. His attendance on the courts for this purpose was wholly voluntary. He engaged in business in the meantime, and the presumption is that he was finding it equally profitable and perhaps more so than the military service. The breach of contract for hiring ordinarily imposes upon the injured party the duty of showing in. an action for damages, because of the failure of the other party to perform, that the time was given to employment, or that reasonable effort to secure service was made, but attended with failure.
The measure of damages in such case would be the amount not obtained by the person injured during the life of the contract. Having repudiated his contract of enlistment and performed no duties thereunder, and having held his status as a soldier in abeyance until compelled by the judgment of the court of last resort to actually begin service, it would be an extraordinary departure from the ordinary rules applicable to a. contract for service, viewed as a contract merely, in the face of these considerations, to permit petitioner to take advantage of his own wrong and receive compensation unless there be something in the statutes relating to the Army and the regulations adopted for its government which gives and fixes privileges differently from the rule stated and determines his rights otherwise regardless of all other considerations, for the circumstances exclude pay or allowance of any kind as a matter of contractual relation only. If impossibility of performance is caused by the acts of one of the parties, it is equivalent to a breach. The conduct of one party to a contract which prevents the other from performing his part is an excuse for nonperformance. “It is a sound principle that he who prevents a thing being done shall not avail himself of the nonperformance he has occasioned.” (Peck v. United States, 102 U. S., 65.)
These familiar principles of the law relating to contracts may be supplemented by the rule recently declared by this *291 court in tbe case of a letter carrier seeking to recover under tbe eigbt-bour law for time employed on active duty as a delivery carrier in excess of eight hours a day, and for intervals of time between trips as a collecting carrier during which no duty was required except one-eighth of an hour each day during certain months of the year, where the court took occasion to say, “ Certainly there is no law which authorizes the Government or its officers to ‘employ’ a person to perform no service. Every law which authorizes the appointment or employment of persons in the public service presupposes some duty or service to be performed thereby.” (King v. United States, ante, p. 234.)
It is contended here, however, that petitioner’s status- as a soldier determines the right to pay and allowance, and that status being a contract, like marriage, one of its incidents is that the obligation of one of the parties does not release the other from corresponding obligation, and that the matter here must be determined by status only; that if the United States neglect or refuse to pay the soldier is still bound to serve, but if the soldier neglects, refuses, or be unable to serve he is still entitled to his pay and allowance, unless these be forfeited in one of the ways or methods prescribed by law. This theory, it is argued, finds support in the underlying principles upon which it is claimed the following cases have been adjudicated by this court: Smith’s Case (2 C. Cls. R., 206); Winter’s Case (3 id., 136); Collins’s Case (15 id., 22); Carson’s Case (17 id., 344); Perkin’s Case (20 id., 438). And in harmony with these views we are referred to the opinion of the Judge-Advocate-General of the Army and certain statutory enactments and regulations governing the military establishment, which, it is claimed, fix the right of the petitioner to the pay and allowances set forth in the petition.
It is likewise claimed that the Supreme Court, in remanding the petitioner to the custody of the military authorities, also settled his privileges and rights, so far as the claim made in this case is concerned, by the following language:
“Enlistment is a contract, but it is one of those contracts which change the status, and where that is changed no breach of contract destroys the new status or relieves from the obligations which its existence imposes. * * * By enlistment the citizen becomes a soldier; his relations to the State and the public are changed; he acquires a new status with correlative *292 rights and duties, and although he may violate his contract obligations his status as a soldier is unchanged.” (137 U. S., 151, 152.)
So far as the decisions of this court go to the question involved we deem it unnecessary to enter into an examination of the particular points upon which they were decided. We find nothing in them which control or govern in any manner the case at bar. It is only necessary to say that the facts in the cases mentioned are so. essentially different and at such variance from the case here we see nothing in them to support this demand.
Nor do we deem it necessary to enter into an examination of the statutes and regulations governing the Army, to which we have been referred by the respective counsel, or to decide the question of what misconduct, if any, on the part of one having the status of a soldier under a mere enlistment may or may not forfeit his pay and allowance. While it is true, as a general rule, accompanying a change of status, that when once accomplished this status is not destroyed by the mere misconduct of one of the parties, it does not necessarily follow that some misconduct may not destroy the right of the guilty party to some privileges growing out of the relation. The correlative duties and rights imposed by the status of marriage, for instance, can be forfeited to the one party or the other according to guilt while the status remains. The wife may, for example, forfeit the husband’s support when, without fault on his part, she deprives him of her society. The status remains in such case, but the maintenance does not necessarily follow. But in our view of the nature of the claim under consideration and the circumstances attending its settlement this line of thought need not be followed.
We know the right to compensation in the military service is governed by certain statutory provisions or regulations made in pursuance thereof, which specially apply to such service. Ordinarily, confinement or suspension from duty under the sentence of a court-martial is not attended by forfeiture or loss of pay unless the forfeiture or loss be imposed by the sentence. But here is the case of an enlisted man who deserted on the first day of his enlistment, and, being apprehended, was court-martialed for the offense and sentenced to confinement. He was likewise required to forfeit certain pay for six months *293 reaching back to the date of his enlistment. This was within a very short time after the enlistment. Petitioner then invoked the aid of the civil courts to permit him to deny the status he had acquired and the consequences of the sentence imposed by the court-martial. In the litigation that followed and the years of time taken to determine the matter, petitioner was not awaiting orders at home and entitled to pay under the circumstances set forth in Williamson’s Case (23 Wall., 411); he was not in arrest by the civil authorities and entitled to the pay while under arrest which, according to military law, soldiers can claim when arrested upon charges against them of a criminal nature; he was neither claiming pay nor expecting it, but was in defiance of the obligation of his enlistment and the status acquired thereunder, so far as his use of the process of the courts of the United States could make him so, or enable him to thwart the obligations he had assumed.
Petitioner was, according to his contention, without military status. As soon as the court of last resort determined his status he was remanded to military custody to undergo the previous sentence and serve as a soldier. Whether further proceedings looking to forfeiture of any part of his pay accruing after the sentence could have been taken against the petitioner, it is needless here to determine, and whether any such proceedings would have been undertaken we can only conjecture. But at this stage of the matter Grimley memorialized the Secretary of War to be discharged from the Army on the ground of mistake, and also to be released from the consequences imposed by the court-martial for his act of desertion in the first instance. Claiming that the misunderstanding which existed in regard to his enlistment ought to secure his discharge from the service, he also claimed that his offense was unintentional, and that he should not be held to serve either as a soldier or to serve out the unexpired portion of his sentence. Can it be doubted that if this memorial had contained any suggestion for compensation during the time the petitioner was in attendance upon the courts of the United States, but really at liberty and prosecuting his private business at the same time, that he would have expected any mitigation of his sentence or disch arge from the service ? An d can it be doubted that the Secretary of War would have declined to entertain any such request at the risk of inviting others to follow the *294 example of tlie petitioner in bis act of insubordination and in trifling witb the matter of the enlistment followed as it Avas by immediate desertion and an appeal to the civil authorities Avhen apprehended as a deserter?
As a matter of fact, so far as the record shows, petitioner claimed nothing to be due to him by the United States. Under the representations made the Secretary of War issued a special order remitting the unexecuted part of the sentence and directing that he be discharged without character from the service, conditionally. The conditions were that the petitioner make good all indebtedness due by him to the United States. This included items for clothing and sums paid for his apprehension as a deserter. The petitioner accepted the terms of release offered. In doing so he either considered himself indebted to the United States according to the understanding of the military authorities, or he was willing to waive any indebtedness or claim that he might have to terminate his enlistment and the punishment for his desertion at one and the .same time. While the transaction was not strictly an accord and satisfaction, nevertheless the settlement was analogous to the principles governing accord and satisfaction between private parties. There was an implied agreement on the part of the soldier that he would assert no claim for compensation against the United States by paying what the Government claimed of him and by leaving the service. Where a claim against the Government is disputed and the claimant accepts a sum in settlement thereof and gives a receipt in full, he thereby bars his action for an alleged balance. No difference in principle exists where, as shown in this case, petitioner Avaived some supposed rights in order to secure other and substantial advantages to himself. It would be difficult for the Government to determine when there would be an end to demands against it if settlements, well understood by persons competent to contract, bn being offered by those in authority and accepted by the persons in interest, should be disregarded as soon as made.
After the decision of the Supreme Court the claimant had no right or shadow of right to be discharged. He understood that and appealed to the clemency of the Secretary of War. This clemency was exercised in his favor, but upon conditions *295 wliich claimant accepted and agreed to conrply witb in accepting discharge from the service. Power to discharge a soldier is a discretion vested in the President, exercised by him through the Secretary of War; and it is essential to the due exercise of this discretion that he have power to exercise it upon conditions prescribed by himself; and this power the judiciary does not desire to question or curtail.
The opinion of the court is that the petition be dismissed.