Keeler, J.
The relator 'made application to this court for a writ of habeas corpus, representing that he was unlawfully restrained of his liberty by the sheriff of Cuyahoga county, and that authority in law did not exist for his detention and custody by such sheriff.
It appears by the oral statements of counsel in court that none of the facts in relation to this custody are at issue. It appears that the relator, Ray Johnson, is an enlisted man of -Corps of Engineers, Ohio National Guard, and is a member of the organized militia of the United States. Thus his status as being a soldier is conceded.
It appears that, under the terms of an act of Congress known as the “Dick Bill,” and entitled “An act to promote the efficiency of the militia and for other purposes,” first passed on January 21st, 1903, and the amendments thereto, the organized militia of all the states are required to be paraded for inspection by officers detailed for that purpose by the War Department at Washington, that it may be ascertained whether such troops are properly equipped, drilled and disciplined for participation.in active service in the field in time of war.
It further appears that a part of such examination consists in the inspection of each individual, man physically,' to determine whether he is in a proper condition of health and strength to take the field, and mentally, to ascertain whether he has the proper training and instruction in and about his soldier duties so that he might be an efficient member of the command in war.
The relator, Johnson, was a member of this command, and was notified by order to appear at the time and place of the inspection. Johnson failed to appear in obedience to the order, and later in the-evening was taken into custody by a non-com *568 missioned officer of his organization and placed in confinement, from which confinement he seeks to be released by this proceeding.
This court had before it at a former term almost the identical question raised by this ease, -in the matter of the application of Joseph Kuehta for a writ of habeas corpus. In the Kuchta case, the relator claimed that he was not a lawful member of the military organization, and sought to question the jurisdiction of the military authorities to hold him for.,an allcipd offense, claiming that at the time of his alleged en’istment he was not of lawful age to take the military oath. This court held that it might look into the question upon his allegation that was not a member of the military organization, but that, upon it satisfactorily appearing to the court that this allegation could not be sustained in fact, and it affirmatively appearing that he was held under color of military authority, othe writ was denied.
This court’s decision was subsequently affirmed by the Supreme Court in 81 O. S., 508, the court placing its decision upon the authority of McGorray v. Murphy, 80 O. S., 413, and In re Grimley, 137 U. S., 150. It appears, however, that the decisions of the Supreme Court in both the Kuchta and Murphy cases were based upon the act of Congress before referred to, and known as the “Dick Bill,” and that this act of Congress has been amended since the decision of the Supreme Court in those cases. A careful study of the amendment leads us to the conclusion that the law as amended is even more unfavorable to the petitioner than the law as it originally stood.
Congress had the undoubted authority, under the federal Constitution, to legislate concerning the militia; and the latest legislation upon this subject merely increases the authority of the federal government and decreases the authority of the several states, incidentally increasing the- federal apportionments for the use of the organized militia, and relieving the states from a portion of the expense of its maintenance; so that it now appears that the organized militia of the several states are, - in great part at least, clothed, armed, equipped, and in part paid by the federal government. The federal government, in so doing, *569 exercised its right t'o inspect, at stated intervals, this equipment in the hands'of the individual soldier, and it appears that this relator was ordered to appear with his command before such an inspector upon the date he was placed in custody and the day prior to the filing of this application. This inspection was for the purpose of ascertaining whether the relator was properly instructed as a soldier, and whether the government equipment in his possession as a soldier was in a condition for immediate service in the ficM in time of war. This inspection was very important.
Under our system of government, where military service is volunta nd our military establishment small in comparison with the vast standing armies of Europe, it is of the most vital importance that our military organization should be at all times in a condition of the highest efficiency. It is upon this broad ground of public policy that the federal courts have constantly refused to inquire into the jurisdiction of military courts in like cases, as In re Mason, 1905 U. S., 696; In re Davison, 21 Fed., 618; In re Crain, 84 Fed., 788.
For the various courts, of whatever district troops happen to be in, to inquire into and review the decision of courts martial, in cases of troops serving within their several jurisdictions, would be to a great extent demoralizing to military discipline, and especially in time of war would tend to weaken the military arm of the government. Moreover, by the military law as established under 'authority of acts of Congress, a soldier brought before a summary court martial has the right to appeal to a general court martial, and even to the commander-in-chief. If he feels himself aggrieved by a decision against him, he may have the same reviewed by a higher authority within the military establishment itself, and thus his rights are as thoroughly protected against error prejudicial to himself as the rights of a' citizen are protected in the civil courts, and in a somewhat «imparmanner.
. In the case at bar there is a stronger reason for refusing this writ than existed in either the Murphy or Kuchta cases. In those eases the relators were on duty, ordered there upon the *570 authority of the Government of Ohio by the Adjutant-General of Ohio. In this case the court is asked to assume jurisdiction in the case of a soldier who is performing duty under orders of the President of the United States through the Secretary of War.
Nothing can be clearer than that this court has no jurisdiction to entertain this action, and. the application of the relator will be summarily denied, and he is remanded to the custody of the military court.