David NOLAND et al., Plaintiffs,

v.

Richard L. IRBY, Commanding General, U. S. Army Armor Center, Fort Knox, Kentucky, Defendant.

Civ. A. No. 6760.

United States District Court,
W. D. Kentucky,
Louisville Division.

June 8, 1971.

Philip L. Grauman, David J. Leibson, Louisville, Ky., for plaintiffs.

George J. Long, U. S. Atty., for defendant.

## JUDGMENT

JAMES F. GORDON, Chief Judge.

This action came on for hearing before the Court on Friday, May 21, 1971. By prior order of the Court, bearing date of April 13, 1971, the complexion of the hearing was circumscribed to two issues, viz:

(1) Whether or not a reasonable basis in fact existed for the restrictions placed by General Irby upon the distribution of Volume I, Number 1, of the newspaper In Formation; and,

(2) The reasonableness of the grounds existing for justification of the refusal of General Irby to deal with the plaintiff Noland as to the issuance of Volume I, Number 5, of the newspaper In Formation.

On hearing date, the Court in the spirit of leniency granted to the plaintiff, over the objection of the defendant, the right to raise in evidence two additional issues:

(a) The reasonableness or unreasonableness of the delay in time between the plaintiff's initial request for approval to issue and distribute Volume I, Number 1, and Volume I, Number 5, and the granting of approval therefor by military authority; and,

(b) Validity of plaintiff's assertion of denial of due process in not being afforded the opportunity of confrontation with military authority at the times such authority considers through channels his request for approval and distribution.

As to the above four issues the Court finds the following:

### Findings of Fact

1. The defendant General Irby, at all times in issue, was the Commanding General of the military installation of Fort Knox, Kentucky, in that capacity holding jurisdiction and control over military and civilian personnel in the neighborhood of 73,000 persons.

2. That at the said army installation there continually exists an Armor Armed Forces training program for thousands of enlisted and officer personnel, dedicated to training in military undertakings for the defense of the nation and themselves individually.

3. That said Army Post is of large geographic size, inhabited, in addition to military personnel, by thousands of dependent family members of such personnel and visited daily as an open Post by numerous friends of such personnel and commercial suppliers and vendors.

4. That the plaintiff Noland, holder of a Masters Degree in journalism, is a member of the military establishment at Fort Knox, Kentucky, as a soldier, with Specialist rating, and has been such for some months in excess of a year.

5. That said Noland engaged himself in the private undertaking of the publication of a newspaper on said Army Post, same being called "In Formation".

6. That on or about April 5, 1970, for the first time the defendant Noland made application to military authority that he might distribute upon the military installation itself Volume I, Number 1, of his publication In Formation, and that such application was the first of its kind or nature ever received by the military establishment at said Post.

7. Upon such application being made, same was, as required by regulations, forwarded by said Irby up through Army channels to proper higher authority.

8. Subsequently, on or about November 1, 1970, said Volume I, Number 1, was approved by higher command for distribution. The distribution thereof was made subject to certain restraints placed thereon by the said Irby (specifically appearing in detail in this record, Irby's deposition beginning line 19, page 49) prescribing points of distribution and the physical manner of distribution, etc. That such were reasonable and proper restrictions, as explained by General Irby, in the accommodation of interest of all concerned.

9. That on the day or night preceding the distribution authorized for December 12, 1970, unknown to defendant Irby, the plaintiff Noland unilaterally made some eighty-odd changes in the content of the issue Volume I, Number 1, that had been submitted to the military authority and approved in original form, sans such changes.

10. That such changes appear to have been more as to appearance and grammatical correction than as to substance; nevertheless, we find such changes, by improving the appearance and readability, to have improved the paper's credibility, thereby creating additional reader appeal and interest over and above that viewed and approved by higher military authority; and that accordingly the actions of Noland were improper.

11. Subsequently, on or about March 1, 1971, plaintiff Noland made application for approval to distribute Volume I, Number 5, *which issue was at that time five months old.* Whereupon, defendant Irby, in view of Noland's prior unilateral changes in Volume I, Number 1, properly refused to deal with the plaintiff Noland as the person representative of the paper In Formation. We find such factually justified as a military disciplinary procedure against said Noland for his prior irregular unilateral actions relative to Volume I, Number 1, In Formation. However, defendant Irby did offer to deal with other persons representative of said publication, but in any event the request of Noland for Volume I, Number 5, was forwarded up through military channels from Fort Knox to higher military authority on March 12, 1971, and bore a *recommendation for approval of distribution* from General Irby. Distribution was authorized by higher authorities under . the regulations on March 30, 1971.

Almost immediately subsequently thereto, General Irby received further military assignment and was succeeded by General Desobry who did offer to negotiate and deal with Specialist Noland relative to the distribution of Volume I, Number 5. By hearing date before us neither Noland nor Desorby had made any further move.

12. We are constrained to express that the credibility of this plaintiff is somewhat tremulous to us. Well educated and sophisticated; in testifying on direct Noland possessed clear and positive recollection of the most minute matters, but became uncertain and lacking of recall as to important facts and details when upon cross-examination. Such, coupled with the fact that in one instance, in particular, he played loose and careless by attempting, in his affidavit, to reflect upon the integrity of military authority by referring that an act had been taken by them in "minutes", when upon cross-examination he acknowledged such act had in fact occurred "three hours" subsequent; admittedly done to foster the impression of arbitrary action on the part of the military.

### Conclusions of Law

█ 1. Pursuant to the foregoing factual Findings, we conclude that there was a reasonable basis in fact for the restrictions placed by General Irby on the distribution of Volume I, Number 1, of the newspaper In Formation.

█ Initially, it must be observed that one in the military service has no absolute right of free speech and, like-

wise, entry thereinto carries with it an acceptance of some abridgment upon such right. Further, military organization and obligation require a specialized community governed by more absolute, as well as different, disciplines from those of the civilian community. Additionally, Courts are required to accommodate the demands of individual rights of those in the military service in a far different context from those encountered in the ordinary run of civilian life. Dash v. Commanding General, 307 F.Supp. 849, aff. 429 F.2d 427, cert. denied 401 U.S. 981, 91 S.Ct. 1192, 28 L.Ed.2d 333 (1971) and cases therein cited.

■ 2. We hold that there was reasonable grounds existing for justification on the basis of military discipline and necessity for the refusal by General Irby to deal with the plaintiff Noland as to the issue Volume I, Number 5.

■ Consistent with the judicial historical hands-off attitude relative to the military, the disciplining of those under oath to obey the orders of their commanders, absent total arbitrariness, should not be disturbed by judicial authority. Chief Justice Warren in the Bill of Rights and the Military 37 New York University Law Review 181. Irby was not arbitrary but, in fact, agreed to deal with any other representative of Noland's publication and further subsequently recommended approval of Volume I, Number 1, distribution to his higher authority.

■ 3. The claim of the plaintiff of unreasonable delay as to approval for distribution of Volume I, Number 1, and Volume I, Number 5, is without merit.

IN FORMATION, not being a publication of "time of the essence news" but more a document dedicated to the espousing of ideological beliefs, was in no way damaged by the delay. As to Volume I, Number 1, the claim must be viewed in the light of the fact that at the time distribution of this issue arose, the question was new and novel in military circles. Army administrative procedures for processing distribution requests had not by that time been adequately estab-

lished. By the time Volume I, Number 5, was submitted for approval, Noland admits it was five months old and he performed no re-write thereof before submission. It was approved for distribution within a month. This claim of unreasonabel delay to us is de minimis.

■ 4. That the plaintiff's assertion of denial of due process in not being afforded the opportunity of confrontation with the military authority at the time of its consideration of the authorization for distribution is without merit.

The Army is not a deliberative body. In re Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636.