Cristobal MALDONADO, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–876.

United States Court of Veterans Appeals.

Argued Oct. 29, 1993.

Decided Nov. 16, 1993.

Rick Surratt (non-attorney practitioner), for appellant.

Adam K. Llewellyn, with whom Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, and Andrew J. Mullen, Deputy Asst. Gen. Counsel, Washington, DC, were on pleadings, for appellee.

Before FARLEY, MANKIN and HOLDAWAY, Judges.

HOLDAWAY, Judge:

Appellant, Cristobal Maldonado, appeals from an April 29, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which

found that the period of October 11, 1958, to September 18, 1960, was not a period of active duty for the purpose of Department of Veterans Affairs (VA) benefits. Appellant is seeking reversal of the decision. The Secretary has filed a motion for summary affirmance. The Court has jurisdiction pursuant to 38 U.S.C.A. § 7252(a) (West 1991). The Court will affirm the BVA decision.

## I. FACTS

Appellant was drafted into the Army in March 1953. He was honorably discharged on November 2, 1954, and reenlisted in the regular Army for six years on November 3, 1954. Appellant applied for a hardship discharge while he was on his way to Augsburg, Germany. He was again honorably discharged for the convenience of the Government on October 10, 1958. A Department of the Army Form 24 from the veteran's service records indicates that the veteran reenlisted on October 11, 1958, for a period of six years.

Appellant returned to the United States and moved to Ohio. He was apprehended by agents of the Federal Bureau of Investigation on October 9, 1959, for desertion. In April 1960, he was court-martialed for desertion for the period of December 5, 1958, to October 9, 1959. He pleaded not guilty to this charge. He defended on the basis that he had been discharged, and, therefore, he was a civilian not subject to the Uniform Code of Military Justice. During the court-martial, the prosecution introduced evidence indicating that appellant was authorized to proceed from Germany to the United States for 30 days leave, with directions to report back to his unit when leave was completed. A military pay order was introduced which indicated that appellant had been discharged on October 10, 1958, and had reenlisted on October 11, 1958, for a period of six years. Appellant's putative signature was on the document, verifying the truthfulness of the information. Appellant testified that he had been granted the hardship discharge for which he had applied. He moved back to the United States believing he had been honorably discharged. He claimed that he had turned in his military identification card. He testified that he did not receive any reenlist-

ment bonus. Nonetheless, he was convicted and was sentenced to be dishonorably discharged from the service, to be reduced to the lowest enlisted grade, and to be confined at hard labor for two years. The convening authority reduced the period of confinement to one year.

On August 31, 1960, during the course of appellate review of this conviction, appellant's petition for a new trial was granted by the Army Board of Review. Appellant argued, and submitted evidence to support, his allegation that some of the documents used to convict appellant were forgeries. The findings and sentence were set aside, and a new hearing was ordered. On September 19, 1960, appellant was restored to duty pending rehearing. The evidence was determined to be insufficient for a new trial. The charge of desertion was dismissed.

Appellant had been reduced to the enlisted grade of private by the court-martial order, but was "restored" to specialist fourth class retroactively effective to October 11, 1958. Subsequently, the Department of the Army determined that appellant was, as he had claimed all along, validly discharged on October 10, 1958, and that such discharge could not be revoked. Therefore, he was released from military control effective April 26, 1961.

By rating decision dated January 30, 1963, the Regional Office (RO) determined that the period from October 10, 1958, to April 26, 1961, was not considered for benefits, as appellant had been discharged in October 1958, and was, ergo, not on active service during that period of time.

On March 8, 1988, appellant attempted to reopen his claim for service connection for a nervous condition. The RO responded by informing appellant that the claim was the same as one he had submitted in October 1962. Appellant was informed that he would have to submit evidence not previously considered in order for his claim to be reopened.

On November 1, 1988, appellant's service representative sent a letter to the RO stating that there was clear and unmistakable error (CUE) in the January 30, 1963, rating decision because the RO refused to acknowledge active military service from October 11, 1958,

to April 26, 1961. Appellant's representative cited to 38 C.F.R. § 3.14(a) (1992) which provides: "[W]here an enlistment is voided by the service department for reasons other than those stated in paragraph (b) of this Section, service is valid from date of entry upon active duty to the date of voidance by the service department."

The VA issued an administrative decision in February 1989, holding that "when one prevails in the position that he or she has never legally been in service, that person must bear the consequences of that position." On February 9, 1989, the VA responded to appellant's assertion of CUE in the January 1963 rating decision. The VA stated that appellant's claim was denied because the evidence failed to establish that his condition was incurred in or aggravated by military service. Furthermore, the VA noted that the record established that his discharge on October 10, 1958, was valid and irrevocable. The purported enlistment on October 11, 1958, was invalid and could not be considered a constructive enlistment.

In June 1989, appellant had a hearing at the Florida RO. Appellant argued that he was "constructively enlisted" during the time in question, i.e., he voluntarily submitted to the military authorities, he met the mental competency and age qualifications, received military pay and allowances, and performed military duties. Appellant testified that he received a lump sum payment in the amount of $1800 as back pay when he was released from confinement.

On April 29, 1992, the BVA found that the period of October 11, 1958, to September 18, 1960, was not a period of active duty for the purpose of VA benefits. *Cristobal Maldonado*, BVA 92–10203 (Apr. 29, 1992). The Board found that appellant was living as a civilian and not under military control between October 11, 1958, and October 8, 1959. Appellant was then confined in a military correctional facility between October 9, 1959, and September 18, 1960. The Board cited to the VA General Counsel conclusive opinion # 1–90 (Aug. 3, 1990), which found that, based on numerous citations to federal cases, when appellant was honorably discharged on October 10, 1958, his status was that of a civilian. The Board quoted the language from the General Counsel's opinion that "having never enlisted, constructively or otherwise, the veteran had no active duty subsequent to his discharge on October 10, 1958, and prior to September 19, 1960." The Veterans' Administration (now Department of Veterans Affairs) has found qualifying service from the date the court-martial was set aside, September 19, 1960, to the date appellant was released from military control, April 27, 1961. The correctness of that decision is not before this Court.

## II. ANALYSIS

The answer to whether the period of time in question, October 11, 1958, to September 18, 1960, can be considered active duty for purposes of VA benefits is simply whether appellant was a civilian or if his status had somehow changed to military. The Court finds that appellant was a civilian and, therefore, the period of time in question was not a period of active duty for the purpose of VA benefits. Appellant's discharge in October 1958 was valid. When appellant was discharged, he became a civilian.

Military status is a legal status resulting, in the case of enlisted personnel, from enlistment or induction. Changing from civilian to military status is a voluntary act. *See United States v. Norman*, 296 F.Supp. 1270, 1276 (D.Ill.1969). A member of the service must acquiesce to his military status. *See United States v. Grimley*, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890). The Court finds that what turned out to be the wrongful actions of the military in attempting to assert court-martial jurisdiction simply cannot impose military status where at all times appellant's defense was to claim civilian status and this position was ultimately vindicated. *See Norman, supra.*

Appellant asserts that he had a constructive enlistment. This misconceives the nature of constructive enlistment. Constructive enlistment requires a *mutuality* of consent on the part of the Government, as well as the putative service member. This doctrine is limited to those situations where the individual has clearly *voluntarily* submit-

ted himself to a change in status from civilian to military. *See Norman, supra.*

 Appellant argues that § 3.14(a) creates a valid enlistment for him. The flaw in this argument is that § 3.14 presupposes an enlistment of some kind. To have a valid enlistment, constructive or otherwise, the Government must *intend* that the putative member enlist and the putative member must *intend* to become a soldier. *See Grimley, supra.* That simply did not happen. There was no contract of enlistment of any kind between the Government and appellant. Wholly unknown to him (and the Government), some third party forged his name to enlistment papers. That which appellant would now characterize as a voluntary enlistment was a mere sham to which appellant was not a party to at all. We will affirm the BVA decision.

 The Court has before it counsel for appellant's motion objecting to the Secretary's motion for summary affirmance and the motion presented at oral argument to limit the Secretary's argument to the motion for summary affirmance. The motion to limit the Secretary's argument is denied. We do note that counsel for appellant did not put the Secretary on notice that he would be presenting the motion to the Court at oral argument. Furthermore, the motion to limit the Secretary's argument, as presented, violates the rules of this Court. *See* Rule 27 of the United States Court of Veterans Appeals Rules of Practice and Procedure. Appellant's motion in opposition of the Secretary's motion for summary affirmance is denied. Appellant's statement in his reply brief entitled "Appellant's Opposition to Appellee's Motion for Summary Affirmance" specifically noted that appellant had no objection to acceptance of the Secretary's motion for summary affirmance in lieu of his brief.

 The Court will accept the Secretary's motion for summary affirmance. However, for future guidance, it is the view of this Court that this case is not one which is appropriate for submission to the Court as a motion for summary affirmance in lieu of full briefing. *See Frankel v. Derwinski,* 1 Vet. App. 23 (1990). Even though the Secretary

believed the case was one of relative simplicity, there are other considerations under *Frankel,* including the question of whether a case is one of first impression. This case is undoubtedly such a case. The case should have been briefed in a full and thorough manner.

 In the future, the Secretary must consider all aspects of the *Frankel* case. The Court has a preference for full briefing in a situation where there is even the slightest doubt whether a motion for summary affirmance in lieu of full briefing is appropriate.

### III. CONCLUSION

The decision of the Board is AFFIRMED.