Ex parte HUBBARD.

(Circuit Court, D. Massachusetts. October 3, 1910.)

No. 723, Law Docket.

HABEAS CORPUS (§ 16*)—MINOR ENLISTED IN VIOLATION OF LAW—STATUS—PUNISHMENT FOR DESERTION.

A minor enlisted in the army when under the age of 16, who has continued to serve and receive pay after passing that age, acquires the status of a soldier like one who was enlisted when over 16 without the consent of his parents, and a court-martial has jurisdiction to try and sentence him to punishment for desertion, from which sentence he cannot be discharged on habeas corpus on petition of himself or his parents.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 16; Dec. Dig. § 16.*]

Petition for writ of habeas corpus on behalf of Edwin H. Hubbard. Writ denied.

William A. Brade, for petitioner.

William H. Garland, Asst. U. S. Atty., and John A. Hull, Judge Advocate, for the United States.

LOWELL, Circuit Judge. This is a petition for a writ of habeas corpus filed by Hubbard's mother. The agreed facts are substantially as follows: Hubbard was born November 29, 1891. On January 21, 1898, he was duly committed to the custody of the Massachusetts State Board of Lunacy and Charity as a neglected child. From about April 1, 1907, until November 8, 1907, he was living at home with his mother, and working and contributing to her support. On November 11, 1907, he was driven from home by the cruel treatment of his father, and applied for help to the State Board of Charity—the legal successor of the State Board of Lunacy and Charity. Thereupon McIntire, an agent of the State Board, accompanied Hubbard to the recruiting office, and by the help of McIntire Hubbard applied to be received as a recruit for the United States army. McIntire was not the legal guardian of Hubbard. He held the record of the board showing that Hubbard was then under 16, but he did not refer to this record, and accepted as true Hubbard's statement that he was 18 years old. By virtue of McIntire's consent as legal guardian, Hubbard's application was accepted. The consent was in the following form:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Consent in Case of Minor.
"(See A. R. 859.)

"I, Joseph P. McIntire, do certify that I am the legal guardian of Edwin H. Hubbard, that the said Edwin H. Hubbard is 18 years of age, and I do hereby freely give my consent to his enlisting as a soldier in the army of the United States for the period of three years. Given at Boston, Mass., this 11th day of November, 1907. [Signed] Joseph P. McIntire.
"Witness: Bernard Remington."

Upon being examined and being accepted as an applicant for enlistment, Hubbard returned to his home, and told his mother that he had enlisted, that the state had signed his papers, and that he was going away the next morning to Ft. Slocum. Thereupon the petitioner said, "Edwin, you have been a good boy," and gave him her blessing. Hubbard's mother had no knowledge of his intention to enlist or enter the army before the conversation just mentioned. She understood that Hubbard was a soldier, and never gave written consent to his enlistment. On November 14, 1907, at Ft. Slocum, Hubbard signed and swore to a paper as follows:

"State of New York. City or Town of Fort Slocum—ss.:

"I, Edwin H. Hubbard, born in Haverhill, in the state of Massachusetts, aged 18 years and ——— months, and by occupation a clerk, do hereby acknowledge to have voluntarily enlisted this 14th day of November, 1907, as a soldier in the army of the United States of America for the period of three years, unless sooner discharged by proper authority; and do also agree to accept from the United States such bounty, pay, rations and clothing as are or may be established by law. And I do solemnly swear (or affirm) that I will bear true faith and allegiance to the United States of America, and that I will serve them honestly and faithfully against all their enemies whomsoever; and that I will obey the orders of the President of the United States, and the orders of the officers appointed over me, according to the rules and Articles of War. [Signed] Edwin H. Hubbard.

"Subscribed and duly sworn to before me this 14th day of November, A. D. 1907. [Signed] James D. Fife,
"Capt. Med. Dept. U. S. A.
"Recruiting Officer.

"I certify that I have carefully examined the above-mentioned man agreeably to the general regulations of the army, and that in my opinion he is free from all bodily defects and mental infirmity which would in any way disqualify him from performing the duties of a soldier.
"[Signed] James D. Fife,
"Capt. Med. Dept. U. S. A.
"Examining Officer.

"I certify that I have minutely inspected the above-named man, Edwin H. Hubbard, previous to his enlistment, and that he was entirely sober when enlisted; that to the best of my judgment and belief he fulfills all legal requirements, and that I have accepted and enlisted him into the service of the United States under this contract of enlistment as duly qualified to perform the duties of an able-bodied soldier, and in doing so have strictly observed the regulations which govern the recruiting service. This soldier has blue eyes, light brown hair, fair complexion; is 5 feet $4\frac{1}{4}$ inches high.
"[Signed] James D. Fife,
"Capt. Med. Dept. U. S. A.
"Recruiting Officer."

On November 30, 1907, the State Board of Charity discharged Hubbard from its custody and control. Hubbard was thereafter assigned to Company L, 27 United States Infantry, was stationed at Ft. Sheridan, Ill., was clothed, armed, equipped, and served as a soldier, and

was paid as such up to March 21, 1908. On that day he voluntarily deserted the service of the army, and remained absent in desertion until April 21, 1910, when he was arrested at Everett, Mass., as a deserter. He was brought to trial before a general court-martial, and was arraigned and tried for a violation of the forty-seventh and sixty-second Articles of War. His counsel before said court-martial filed a plea to the court-martial's jurisdiction, relying on Rev. St. §§ 1117, 1118 (U. S. Comp. St. 1901, pp. 813, 814). Hubbard was convicted by the court-martial and was sentenced to imprisonment at hard labor, which sentence was duly approved by the officer commanding the Department of the East. Pursuant to the order of the court-martial, Hubbard was dishonorably discharged.

.The statutes which may have bearing upon the case are as follows: Rev. St. § 1116.:

"Recruits enlisting in the army must be effective and able-bodied men, and between the ages of sixteen and thirty-five years, at the time of their enlistment. This limitation as to age shall not apply to soldiers re-enlisting." (U. S. Comp. St. 1901, p. 813.)

Section 1117:

"No person under the age of twenty-one years shall be enlisted or mustered into the military service of the United States without the written consent of his parents or guardians: Provided, that such minor has such parents or guardians entitled to his custody and control."

Section 1118:

"No minor under the age of sixteen years, no insane or intoxicated person, no deserter from the military service of the United States, and no person who has been convicted of a felony shall be enlisted or mustered into the military service."

Section 1342:

"The armies of the United States shall be governed by the following rules and articles: * * * The word soldier shall be understood to include noncommissioned officers, musicians, artificers, and privates, and other enlisted men, and the convictions mentioned therein shall be understood to be convictions by court-martial." (U. S. Comp. St. 1901, p. 944.)

Article 3:

"Every officer who knowingly enlists or musters into the military service any minor over the age of sixteen years without the written consent of his parents or guardians, or any minor under the age of sixteen years, or any insane or intoxicated persons, or any deserter from the military or naval service of the United States, or any person who has been convicted of any infamous criminal offense, shall, upon conviction, be dismissed from the service, or suffer such other punishment as a court-martial may direct." (Page 945.)

Article 47:

"Any officer or soldier who, having received pay, or having been duly enlisted in the service of the United States, deserts the same, shall, in time of war, suffer death, or such other punishment as a court-martial may direct; and in time of peace, any punishment, excepting death, which a court-martial may direct." (Page 952.)

Article 48:

"Every officer who deserts the service of the United States shall be liable to serve for such period as shall, with the time he may have served previous

to his desertion, amount to the full term of his enlistment; and such soldier shall be tried by a court-martial and punished, although the term of his enlistment may have elapsed previous to his being apprehended and tried." (Page 953.)

Article 62:

"All crimes not capital, and all disorders and neglects, which officers and soldiers may be guilty of, to the prejudice of good order and military discipline, though not mentioned in the foregoing Articles of War, are to be taken cognizance of by a general, or a regimental, garrison, or field-officers' court-martial, (a) according to the nature and degree of the offence, and punished at the discretion of such court." (Page 957.)

The principal question argued was this: Had the court-martial jurisdiction to try Hubbard for what would have been a military offense if his enlistment had not contravened the statutes? The petitioner contended that Hubbard's enlistment was forbidden by Rev. St. §§ 1116, 1117, 1118, and by article 3. Her counsel argued that Hubbard's contract of enlistment was either utterly void or at least voidable at her election; hence that the contract of enlistment had been avoided, that Hubbard is not and never was a soldier, that so the court-martial was without jurisdiction, and that Hubbard should be discharged on this petition. The respondent contended, on the other hand, that the enlistment, though in contravention of the statutes, yet created a status, and that neither the enlisted boy nor his parents could protect him from the punishment provided in article 47. "In this transaction something more is involved than the making of a contract, whose breach exposes to an action of damages. Enlistment is a contract; but it is one of those contracts which changes the status, and, where that is changed, no breach of the contract destroys the new status or relieves from the obligations which its existence imposes. * * * By enlistment the citizen becomes a soldier. His relations to the state and the public are changed. He acquires a new status, with correlative rights and duties; and, although he may violate his contract obligations, his status as a soldier is unchanged. He cannot of his own volition throw off the garments he has once put on, nor can he, the state not objecting, renounce his relations and destroy his status on the plea that, if he had disclosed truthfully the facts, the other party, the state, would not have entered into the new relations with him, or permitted him to change his status. Of course, these considerations may not apply where there is insanity, idiocy, infancy, or any other disability which in its nature disables a party from changing his status or entering into new relations. But, where a party is sui juris without any disability to enter into the new relations, the rule generally applies as stated. * * * No more can an enlisted soldier avoid a charge of desertion, and escape the consequences of such act, by proof that he was over age at the time of enlistment, or that he was not able-bodied, or that he had been convicted of a felony, or that before his enlistment he had been a deserter from the military service of the United States. These are matters which do not inhere in the substance of the contract, do not prevent a change of status, do not render the new relations assumed absolutely void. And in the case of a soldier these considerations become of vast public importance. While our regular army is small compared with those of

European nations, yet its vigor and efficiency are equally important. An army is not a deliberative body. It is the executive arm. Its law is that of obedience. No question can be left open as to the right to command in the officer, or the duty of obedience in the soldier. Vigor and efficiency on the part of the officer and confidence among the soldiers in one another are impaired if any question be left open as to their attitude to each other. So, unless there be in the nature of things some inherent vice in the existence of the relation, or natural wrong in the manner in which it was established, public policy requires that it should not be disturbed." Grimley's Case, 137 U. S. 147, 151, 152, 153, 11 Sup. Ct. 54, 55, 34 L. Ed. 636.

In the case referred to the disability alleged was excessive age under section 1116, one of the sections which forbids enlistment under 16, and the recruit was there denied discharge on his own petition. It has been held, indeed, that the parent of a minor recruit who has enlisted without the parent's consent may obtain the recruit's discharge if no military offence has been committed. Carver's Case, 103 Fed. 624. The parent's right has been deemed superior to that of the United States. A parent is not altogether estopped or bound by the statement of the recruit made at the time of enlistment. On the other hand, it is established law that a minor enlisted over 16 without his parents' consent cannot himself repudiate the contract and obtain his release from service on his own petition. See Wagner's Case (D. C.) 24 Fed. 135; Davison's Case (C. C.) 21 Fed. 618; Hearn's Case (D. C.) 32 Fed. 141; Spencer's Case (D. C.) 40 Fed. 149; Solomon v. Davenport, 87 Fed. 318, 30 C. C. A. 664. Article 47 has no application to the case supposed. Later cases have gone much farther. In his opinion in Grimley's Case Mr. Justice Brewer suggests that the recruit's minority may be availed of to avoid the contract of enlistment and so to re-establish the recruit's old status. Judge Brewer's language suggests that a discharge might be obtained in case of minority even upon a petition of the minor recruit himself. The learned judge, however, could not have intended his language to be taken generally, as the opinion in Morrissey's Case,[1] immediately following that in Grimley's Case and also written by Judge Brewer, decides against the recruit's right to discharge in the case supposed. It has been decided in cases later than Morrissey's Case that the status of a soldier may exist, notwithstanding the recruit's minority at the time of his enlistment, and that a recruit, having enlisted and having received pay, who subsequently deserts, and is convicted of desertion, cannot be released on habeas corpus even where the petition is filed by his parents. Miller's Case, 114 Fed. 838, 52 C. C. A. 472; Reaves' Case, 126 Fed. 127, 60 C. C. A. 675; Moore's Case, 159 Fed. 701, 86 C. C. A. 569; Scott's Case, 144 Fed. 79, 75 C. C. A. 237. See, also, Kaufman's Case (C. C.) 41 Fed. 876; Dowd's Case (D. C.) 90 Fed. 718; Lewkowitz' Case (C. C.) 163 Fed. 646; Rock's Case (C. C.) 171 Fed. 240.

The case at bar differs from Miller's Case only in that here the petitioner at the time of his enlistment lacked a few days of being 16 years old. This fact alone is relied upon to support the petition of Hubbard's mother. It is argued that an enlistment under 16 is absolutely,

[1] 137 U. S. 157, 11 Sup. Ct. 57, 34 L. Ed. 644.

forbidden, while the enlistment of a minor over 16 is permitted with the consent of the parents. But the difference seems immaterial in the decision of this case. On this theory of the law the petitioner rests her claim altogether on sections 1116 and 1118. In the latter a minor under 16 is classed with intoxicated and criminal persons. Can it be supposed that a drunkard or a criminal who has deserted the army in time of danger may set up his intoxication or his criminality at the time of his enlistment as a defense to a prosecution for desertion? The contrary is asserted in Grimley's Case, and seems an inevitable conclusion. That one class of applicants for enlistment excluded by the section should be allowed to desert in such case without punishment, while others excluded by analogous language may not set up their disqualification at the time of enlistment, is contrary to the natural interpretation of the law, and gives the language of the section now one meaning and now its opposite. An exceptionally well-grown boy just under 16 may hazard military operations by his desertion as well as one who has just passed that age. In the existing state of the decisions I find myself unable to follow the dictum of Judge, afterwards Mr. Justice, Brown in Cosenow's Case, 37 Fed. 668, 670.

Moreover, in the case at bar, Hubbard's service and his receipt of pay continued long after the 16-year limit had been passed. It is not to be supposed that a boy who has enlisted under 16, whether with or without his parents' consent, may continue in the service until he is nearly or quite of age, and then defend himself against a charge of desertion on the ground that his original enlistment was entered into when he was under 16. By remaining in the service and by receiving pay between 16 and 18, he may not ratify his contract of enlistment in the strict sense of ratification, but his acts are the equivalent of an enlistment after 16. The court has not here to consider cases like Hanchett's Case, 18 Fed. 26, Baker's Case (C. C.) 23 Fed. 30, Houghton's Case (C. C.) 129 Fed. 239, and Carver's Case (C. C.) 103 Fed. 624, where the complaint for the alleged offense was deemed not to have proceeded far enough to prevent a discharge upon the petition brought by the recruit's parent. I hold, therefore, that one recruited under 16, who has continued to serve and receive pay after passing that age, who has deserted, has been tried for desertion, and has been convicted and sentenced therefor, stands like a minor who has enlisted without his parents' consent when over 16. The court-martial had jurisdiction.

As the considerations already mentioned call for a decision of this case in the respondent's favor, the court need not consider if, under the circumstances, McIntire's consent to the enlistment was the consent of Hubbard's guardian, or if the oral approval of the enlistment by the petitioner estops her from bringing this petition. It is to be noticed that section 1118 does not require the parents' consent to be written, and that this provision exists only in the article which deals with the duties of the recruiting officer.

182 F.—6