Ex parte DOSTAL.

(District Court, N. D. Ohio, E. D. August 15, 1917.)

No. 9562.

1. HABEAS CORPUS ⬀51—PROCEEDINGS—PARTIES.

While an application for a writ of habeas corpus may be made by one person on behalf of another, an application in this form entitles the petitioner to such relief only as might be given if the application were made by the person detained in his own name.

2. HABEAS CORPUS ⬀16—JURISDICTION OF COURTS—DETENTION BY MILITARY AUTHORITIES.

If a military tribunal has jurisdiction to try a person charged with an offense against military law, the civil courts cannot interfere by writ of habeas corpus.

⬀For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3.** ARMY AND NAVY ☞44(2)—MILITARY COURTS—PERSONS SUBJECT TO JURISDICTION.

An enlisted man, occupying and enjoying that status, with all its burdens and obligations, may be detained by the military authorities and tried by a court-martial for any offense against military law.

**4.** ARMY AND NAVY ☞44(2, 3)—MILITARY COURTS—PERSONS SUBJECT TO JURISDICTION.

One who enlisted in the National Guard, was accepted, took the prescribed oath, and later took the federal enlistment oath, as prescribed by National Defense Act June 3, 1916, c. 134, § 70, 39 Stat. 201 (Comp. St. 1916, § 3044i), and received pay and clothing over a long period from the state and nation, is a soldier, subject to the jurisdiction of a military tribunal for any offense committed against military law, though he was under 21 when he enlisted, and enlisted without the written consent of his parent or guardian, and though he was an alien, who had not made the declaration of his intention to become a citizen, and though he had a mother dependent upon him for support.

**5.** ARMY AND NAVY ☞19—ENLISTMENT OF MINORS—VALIDITY.

A minor's enlistment, without the written consent of his parent or guardian, when such consent is required, is not void, nor is it voidable by him, though he may be released from the service by a timely application of his parent or guardian, having a superior right to his custody or control.

**6.** ARMY AND NAVY ☞19—ENLISTMENT OF MINORS—VALIDITY.

Where a minor enlists, without the written consent of his parent or guardian, an application by the parent or guardian for his release must be made with reasonable diligence after acquiring knowledge of the enlistment, and before an offense has been committed by the minor, and after an offense has been committed, and especially after he has been placed under arrest and charges have been preferred against him, it is too late for the parent or guardian to oust the jurisdiction of the military authorities by an application for a writ of habeas corpus.

**7.** ARMY AND NAVY ☞19—ENLISTMENT OF MINORS—VALIDITY.

Where a minor had no parent or guardian living in the United States when he enlisted, the subsequent arrival of his mother in the United States could not have any retroactive effect upon the prior enlistment.

**8.** ARMY AND NAVY ☞19—ENLISTMENT OF MINORS—VALIDITY.

As National Defense Act June 3, 1916, permits the enlisting of a minor over the age of 18 without the written consent of his parent or guardian, where one over 18 and under 21, who had enlisted prior to the passage of that act, subsequently took the federal enlistment oath prescribed by section 70 thereof, the defects in his original enlistment were immaterial, and any right of the parent or guardian to reclaim his custody or control was extinguished.

**9.** ARMY AND NAVY ☞19—ENLISTMENT OF MINORS—VALIDITY.

The parent or guardian of an enlisted minor may waive the statutory requirement for his written consent, and does waive it by acquiescing with knowledge in the minor's continuance in the service, thus permitting him to draw the pay and emoluments of a soldier.

**10.** ARMY AND NAVY ☞18—ENLISTMENT—VALIDITY.

An alien, offering to enlist and accepted as a soldier, cannot avoid his contract of enlistment, and thereby escape liability for service or to punishment, especially as Comp. St. 1916, § 1888, providing that no person who is not a citizen, or who has not made a legal declaration of his intention to become a citizen, shall be enlisted for a first enlistment, is limited to enlistments in time of peace.

**11.** ARMY AND NAVY ☞18—ENLISTMENT—VALIDITY.

There is nothing in the treaty between the United States and the government of Austro-Hungary invalidating an enlistment by a native of Austria.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

12. ARMY AND NAVY ⬤⟹44(2)—CALLING MILITIA INTO SERVICE OF THE UNITED STATES.

National Defense Act, § 58 (Comp. St. 1916, § 3044), provides that the National Guard shall consist of the regularly enlisted militia, etc. Section 70 provides that enlisted men in the National Guard, whose enlistment contracts contain an obligation to defend the Constitution of the United States and obey the orders of the President, shall be recognized as members thereof, and that others shall not be so recognized until they have signed the enlistment contract and taken the oath therein provided. Section 111 (Comp. St. 1916, § 3045) and Selective Draft Law May 18, 1917, authorize the President to draft all members of the National Guard into the military service of the United States. *Held*, that an order of the President, calling a company and regiment of the National Guard into the federal service, made a member of such company and regiment, whose original enlistment contract contained the obligation prescribed by section 70, and who, when previously called into the federal service, had taken the additional oath prescribed by that section, a soldier of the United States army, subject to military trial or punishment, though he had not consented to be mustered into the military forces of the United States under such order.

13. ARMY AND NAVY ⬤⟹20—CALLING MILITIA INTO SERVICE OF THE UNITED STATES.

Under Const. art. 1, § 8, authorizing Congress to organize and equip armies, and to provide for the common defense, and National Defense Act June 3, 1916, and Selective Draft Law May 18, 1917, the President has authority to draft compulsorily into the services of the United States all officers and enlisted men of the National Guard, and Congress had authority to confer such power; compulsory service being in no way violative of the Constitution.

14. ARMY AND NAVY ⬤⟹18—ENLISTMENT—VALIDITY.

That an enlisted soldier has a mother, of whom he is the only support, does not make void his contract of enlistment.

15. CONSTITUTIONAL LAW ⬤⟹74—JUDICIAL FUNCTIONS—ENCROACHMENTS ON EXECUTIVE.

Under Selective Draft Law May 18, 1917, § 4, authorizing the President to exclude or discharge at his discretion those having persons dependent upon them for support, rendering their exclusion or discharge advisable, dependency is not a matter of which the courts can take judicial cognizance.

Ex parte application by Rudolph Dostal, on behalf of John Hackenberg, for a writ of habeas corpus. Petition dismissed.

James A. Miles and Franklin Rubrecht, both of Columbus, Ohio, for petitioner.

Hubert J. Turney, and E. S. Wertz, U. S. Atty., both of Cleveland, Ohio, for respondents.

WESTENHAVER, District Judge. This is an application by Rudolph Dostal, on behalf of one John Hackenberg, for a writ of habeas corpus. Upon the presentation of the petition an alternative writ was issued, and the defendants, in response thereto, produced in court the body of John Hackenberg and made a return showing the cause of his detention. Evidence was introduced on behalf of the petitioner and of the respondents.

John Hackenberg, the person alleged to be restrained illegally of his liberty, is a native of Austria. He came to this country about June 25, 1914. He enlisted on June 7, 1915, in Company B, Eighth In-

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

fantry, National Guard of the State of Ohio. At the time of his enlistment he made an application declaring himself to be 21 years of age and a citizen of the United States. He was thereupon accepted as an enlisted man and agreed to serve for a term of 3 years, unless sooner discharged. He also made and subscribed an oath of enlistment. By this oath he declares that he will bear true faith and allegiance to the United States of America and the state of Ohio, that he will serve them honestly and faithfully against all their enemies whomsoever, and that he will obey the orders of the President of the United States, the Governor of the state of Ohio, and the orders of the officers appointed over him, according to the rules and articles of war, and the regulations for the government of the Ohio National Guard.

On June 19, 1916, the company and regiment to which he belonged responded to the mobilization order of the President of the United States for service on the Mexican border. On July 2, 1916, he took the federal enlistment oath prescribed by section 70 of the National Defense Act of June 3, 1916. He was mustered out of the federal service on March 2, 1917. From the time of his enlistment and until he was mustered out he performed all the military duties required of him, and has drawn and accepted pay and clothing. On July 10, 1917, the company and regiment to which he belongs was called into the federal service, pursuant to paragraph 2, section 1, Act May 18, 1917. He reported for duty at the place of rendezvous with his company, and answered "present" to the roll call, and was checked as "present" by the federal mustering officer. On July 30th following, for some reason not developed in the evidence, he was placed under arrest, and has since been in confinement. On August 3, 1917, formal charges were preferred against him for violating the laws of the United States and the Articles of War, particularly violation of the fifty-fourth Article of War relating to fraudulent enlistments.

Respondents' answer shows that he is restrained of his liberty by reason of these charges, and that he will be brought to trial upon them before a court-martial as soon as practicable and without any undue delay.

The evidence shows that he is not, in fact, a citizen of the United States; that he has not made a legal declaration of his intention to become a citizen; that he was born January 22, 1897, and was therefore 18 years and 5 months of age when he first enlisted, and is now under 21 years of age; that no written consent of a parent or guardian was obtained or given before he enlisted; and that, because of his statement touching his age and citizenship in his application for enlistment, no such consent was asked or required. Further, that he had no parent or guardian at the time of his enlistment in the United States, that his mother was then living in Austria, and that she on August 25, 1916, arrived in the United States, bringing with her a younger daughter.

She testifies that she did not know of his enlistment until after her arrival in the United States, at which time he was absent on the Mexican border in service with his company, and that she learned of his enlistment immediately after her arrival. She testifies that she is

without means or ability to support herself and that she is being supported in a large part by him and by a son-in-law.

Upon these facts the petitioner, Rudolph Dostal, contends that John Hackenberg's confinement and detention are illegal upon the following grounds:

(1) That he is under 21 years of age, and that neither at the time of his enlistment, nor since, has his parent or guardian consented in writing to his enlistment.

(2) That he is an alien subject of the emperor of Austria, and has not made a legal declaration of his intention to become a citizen of the United States.

(3) That he has refused to enlist or to be mustered into the service as a soldier in the United States army, under the President's mobilization or draft order of July 10, 1917, and that upon the facts stated he cannot be compelled so to enlist or to be mustered into the service.

(4) That he has a widowed mother living with him in Akron, Summit county, Ohio, of whom he is the only and sole support.

[1] This application is made on his behalf by Rudolph Dostal, his brother-in-law. It is proper practice to make an application by one on behalf of another; but an application in this form entitles the petitioner to such relief only as might be given if the application were made by the person thus detained in his own name. An application may be made by a parent or guardian having a superior right to the custody and control of a person illegally detained, when such person might not himself obtain relief. In similar cases, a parent or guardian has been permitted to obtain the discharge of a minor from military control, when the minor himself might not obtain such relief. Any objection to granting relief in the present case, because the application was made by or on behalf of the person confined, rather than by the parent or guardian entitled to his custody and control, is a matter of form only. If it were necessary, in order that full relief should be granted, according to the rights of the parent or guardian, an amendment could be made, making the mother a party plaintiff. I shall therefore disregard the question of form, and dispose of this case on its merits, as if all proper parties were present asking relief.

[2] It is settled law that, if a military tribunal has jurisdiction to try a person charged with an offense against military law, the civil courts cannot interfere by writ of habeas corpus. In the case of In re Grimley, 137 U. S. 147, at page 150, 11 Sup. Ct. 54 (34 L. Ed. 636), Mr. Justice Brewer, delivering the opinion, said:

"It cannot be doubted that the civil courts may in any case inquire into the jurisdiction of a court-martial, and if it appears that the party condemned is not amenable to its jurisdiction, it may discharge him from the sentence. And, on the other hand, it is equally clear that by habeas corpus the civil courts exercise no supervisory or correcting power over the proceedings of a court-martial, and that no mere errors in their proceedings are open to consideration. The single inquiry, the test, is jurisdiction. That being established, the habeas corpus must be denied and the petitioner remanded. That wanting, it must be sustained and the petitioner discharged. If Grimley was an enlisted soldier, he was amenable to the jurisdiction of the court-martial."

Authorities to the same effect are numerous. See the following: In re Tarble, 13 Wall. 397, 20 L. Ed. 597; Ex parte Dunakin (D. C.) 202 Fed. 290: Ex parte Hubbard (C. C.) 182 Fed. 76; Dillingham v. Booker, 163 Fed. 696, 90 C. C. A. 280, 18 L. R. A. (N. S.) 956, 16 Ann. Cas. 127; U. S. v. Williford, 220 Fed. 291, 136 C. C. A. 273.

[3] The primary and controlling question then is: Was or is John Hackenberg an enlisted man, occupying and enjoying that status, with all its burdens and obligations? If he is, then he may be detained by the military authorities, and tried by a court-martial for any offense committed by him against military law. It is not denied, but, on the other hand, conceded, that a misrepresentation respecting his age and citizenship, whereby he procured and enjoyed the pay and emoluments of a soldier, is an offense against military law, subject to be dealt with according to the fifty-fourth Article of War.

[4] I am of opinion that this question must be answered in the affirmative. His application to be enlisted, and the acceptance thereof, his taking the prescribed oath as a member of the Ohio National Guard, his taking later the federal enlistment oath as prescribed by section 70 of the National Defense Act, his receipt of pay and clothing over a long period, from the state and nation, makes him a soldier, subject to the jurisdiction of a military tribunal for any offense committed against military law. The fact that he was under 21 when he enlisted, or that the written consent of his parent or guardian was not given to such enlistment, or that he was an alien, who had not made a declaration of his intention to become a citizen, or that he had then or now a mother dependent upon him for support does not, in my opinion, make his contract of enlistment void, or prevent the status of a soldier, with its duties and obligations, attaching to him. My reasons for these conclusions, and some observation as to each contention made by the petitioner, will be briefly stated.

[5, 6] (1) It is settled law that a minor, who enlists without the written consent of a parent or guardian, when such consent is required, becomes a soldier. His enlistment is not void, nor is it voidable in any event by him. He may be released from the service by a timely application of the parent or guardian having a superior right to his custody or control. But this application must be made with reasonable diligence, after the parent or guardian has acquired knowledge of the actual enlistment, and before an offense has been committed by him. After an offense has been committed by the minor against the military law, and especially after he has been placed under arrest and charges have been preferred against him, it is too late for the parent or guardian to oust the jurisdiction of the military authorities by an application to the civil courts for a writ of habeas corpus. See the following: Ex parte Grimley, 137 U. S. 147, 11 Sup. Ct. 54, 34 L. Ed. 636; In re Morrissey, 137 U. S. 157, 11 Sup. Ct. 57, 34 L. Ed. 644; Ex parte Hubbard (C. C.) 182 Fed. 76; Ex parte Dunakin (D. C.) 202 Fed. 290; Dillingham v. Booker, 163 Fed. 696, 90 C. C. A. 280, 18 L. R. A. (N. S.) 956, 16 Ann. Cas. 127; U. S. v. Williford, 220 Fed. 291, 163 C. C. A. 273; McGorray v. Murphy, 80 Ohio St. 413, 88 N. E. 881, 17 Ann. Cas. 444.

[7] Upon these considerations alone the application should be denied, so far as it is based on his minority, and some further observations lead to the same conclusion. As the law stood when he enlisted (Rev. St. § 1117), no person under the age of 21 years should be enlisted or mustered into the service of the United States without the written consent of his parent or guardian, provided such minor had a parent or guardian entitled to the custody and control of him. Hackenberg had no guardian or parent at that time living in the United States entitled to the custody and control of him. It is at least questionable whether a parent or guardian residing in a foreign country is entitled to the custody and control of a minor residing in the United States. This question was considered and decided by De Haven, District Judge. In re Perrone (D. C.) 89 Fed. 150. In that case an alien minor, whose parents resided in Italy, had enlisted, and shortly after his enlistment a guardian was appointed and qualified in the United States, who then applied for a writ of habeas corpus for the discharge of his ward, because the enlistment had been made without the written consent of his parent or guardian. It was held that the relief asked should not be granted, and this holding seems to me to be based upon sound reasons. Obviously, if there is no parent or guardian entitled to his custody or control, or qualified to give or withhold consent at the time of the enlistment, the contract of enlistment is valid and regular, and, if valid and regular when made, it does not become defective by a subsequent change of conditions. Therefore the arrival in the United States at a later date of Hackenberg's mother could not, it seems to me, have any retroactive effect upon a prior enlistment, regular in all respects when made.

[8] Furthermore, the National Defense Act of June 3, 1916, now permits the enlisting of minors over the age of 18 years without the written consent of the parent or guardian. This act was in full force and effect when Hackenberg's mother came to the United States. Hackenberg, after the passage of this act, and under favor of its provisions, took the federal enlistment oath prescribed by section 70 thereof. It was competent at this date, without the written consent of his parent or guardian, then, to enlist, and as a result of his acts he then became an enlisted man in what is sometimes called the federalized National Guard. The contract of enlistment and his rights and obligations are regulated and controlled by that act. He created in effect by his enlistment oath, taken pursuant to its provisions, and by his acceptance thereafter of pay and clothing, a new status for himself as a member of the National Guard created, regulated, and governed by the National Defense Act. The defects, if any, in his original enlistment as a member of the Ohio National Guard, became thereafter, it seems to me, immaterial and unimportant. Any latent right that the parent or guardian prior thereto might have had to reclaim his custody or control, because his enlistment was without his consent, is extinguished in consequence of these new conditions. His status as a regularly enlisted man under the National Defense Act has become strictly regular, and not voidable by parent or guardian.

[9] Furthermore, the written consent required of the parents or

guardian of a minor is primarily for the benefit of such parents or guardian. It is designed, not merely to protect an immature minor from improvident action, but to preserve the parent's or guardian's right to his custody and service. The parent or guardian may undoubtedly waive the requirement that the consent be in writing. This written consent may undoubtedly be given after, as well as at the time of, the enlistment. It follows, as a consequence, that the parent or guardian may, by acquiescence, with knowledge, after the enlistment, waive all right to relief because written consent was not previously given. This waiver will result from silence or acquiescence while a minor is continuing in the service and drawing pay from the government. In Ex parte Dunakin, 202 Fed. 290, Cochran, District Judge, according to the third headnote, held:

"Where a minor enlisted without the consent of his parent or guardian, and his mother, who was his surviving parent, on learning of his enlistment shortly thereafter, did nothing to repudiate the same or to secure his release, and testified that she would have been reconciled to it, had he remained in the army and not deserted, but that after his desertion she wanted to keep him out of the army, her acts constituted an implied consent to his enlistment."

See, also, the following: State v. Dimick, 12 N. H. 194, 37 Am. Dec. 197; In re Morrissey, 137 U. S. 157 (bottom of paragraph at page 159), 11 Sup. Ct. 57, 34 L. Ed. 644; Ex parte Hubbard (C. C.) 182 Fed. 76 (middle of paragraph at page 81).

In the present case both John Hackenberg and his mother, after the passage of the National Defense Act reducing to 18 years the age above which one may enlist without the consent of the parent or guardian, have acquiesced in his continuing in the service, thus permitting him to draw the pay and emoluments of a soldier. This acquiescence, in my opinion, is the equivalent of a prior written consent, and might of itself be sufficient to bar the mother from the relief here asked.

[10] (2) An alien, who offers to enlist and is accepted as a soldier, cannot avoid his contract of enlistment, and thereby escape liability either for service or to punishment.

An alien, who has not made a legal declaration of his intention to become a citizen, is not obliged to enlist. He is not, under the provisions of Act May 18, 1917, subject to the selective draft. He cannot be compelled or coerced, in the present state of the law, to enlist or perform military service. He may, however, voluntarily offer himself for service as a soldier, and, if accepted, he thereby acquires the status of an enlisted man, subject to all its duties and obligations. The government may not accept him; but, if accepted, he cannot himself plead his want of qualification, nor escape service.

This question was fully considered in U. S. v. Cottingham, 1 Rob. (Va.) 615, 40 Am. Dec. 710. In that case an alien had enlisted, representing himself to be a citizen of the United States, under an act of Congress which prescribes as a qualification for enlistment that all recruits should be citizens of the United States. In the opinion it is said:

"An alien has no right, founded upon any principle either of municipal or international law, to claim exemption from the consequences of his own voluntary engagement, whether for military or any other service. No one supposes

that he labors under a disability in this respect; for though, by such a stipulation, he may by possibility involve himself in difficulties in regard to his allegiance to his native sovereign, that is a matter for his own consideration, and cannot affect the validity of his new obligation. If any authority were necessary for so self-evident a proposition, it would be found, not only in the practice of employing foreign mercenaries, which has prevailed amongst civilized nations in all ages, but in the doctrine as laid down by the most approved writers: Vattel, b. 1, c. 19, § 213; 1 Bl. Com. 370."

It is settled law that eligibility requirements are for the protection of the government, and not for the soldier. If the government waives an eligibility requirement, or if, after enlistment, it does not avail itself thereof to discharge the soldier, the latter cannot urge his want of qualification to obtain his discharge, or to escape punishment for an offense against military law. The law in this respect is best stated by Mr. Justice Brewer in Re Grimley, supra, from which we quote as follows:

"Grimley has made an untrue statement in regard to his qualifications. The government makes no objection because of the untruth. The qualification is one for the benefit of the government, one of the contracting parties. Who can take advantage of Grimley's lack of qualification? Obviously only the party for whose benefit it was inserted. Such is the ordinary law of contract. Suppose A., an individual, were to offer to enter into contract with persons of Anglo-Saxon descent, and B., representing that he is of such descent, accepts the offer and enters into contract; can he come thereafter, A. making no objection, repudiate the contract on the ground that he is not of Anglo-Saxon descent? A. has prescribed the terms. He contracts with B. upon the strength of his representation that he comes within these terms. Can B. thereafter plead his disability in avoidance of the contract? On the other hand, suppose for any reason it could be contended that the proviso as to age was for the benefit of the party enlisting; is Grimley in any better position? The matter of age is merely incidental, and not of the substance of the contract; and can a party, by false representations as to such incidental matter, obtain a contract, and thereafter disown and repudiate its obligations on the simple ground that the fact in reference to this incidental matter was contrary to his representations? * * * He cannot of his own volition throw off the garments he has once put on, nor can he, the state not objecting, renounce his relations and destroy his status, on the plea that, if he had disclosed truthfully the facts, the other party, the state, would not have entered into the new relations with him, or permitted him to change his status. * * * A naturalized citizen would not be permitted, as a defense to a charge of treason, to say that he had acquired his citizenship through perjury, that he had not been a resident of the United States for five years, or within the state or territory where he was naturalized one year, or that he was not a man of good moral character, or that he was not attached to the Constitution. No more can an enlisted soldier avoid a charge of desertion, and escape the consequences of such act, by proof that he was over age at the time of enlistment, or that he was not able-bodied, or that he had been convicted of a felony, or that before [the time of] his enlistment he had been a deserter from the military service of the United States. These are matters which do not inhere in the substance of the contract, do not prevent a change of status, do not render the new relations assumed absolutely void."

United States statutes do not make void the enlistment contract of an alien. His actual situation after enlisting is less favorable than that of a minor, intoxicated person, or one over the age limit, who the law says shall not be enlisted. In all these cases the uniform holding is that the enlistment is none the less valid, although the enlisted man may perhaps be punished for his fraudulent enlistment. Section 1888,

U. S. Compiled Statutes, Annotated, 1916, gives the only disqualification for enlistment applicable to aliens. This section provides that no person who is not a citizen of the United States, or who has not made a legal declaration of his intention to become a citizen, shall in time of peace be enlisted for the first enlistment of the army. It will be noted that this limitation applies only in times of peace; if the United States is at war, the limitation does not apply. It has long been the practice to enlist aliens in the United States army and in the naval service. The practice has been sustained by numerous opinions of the Attorney General of the United States; and Congress, in recognition of the practice, has conferred valuable privileges upon honorably discharged alien soldiers and sailors. It permits them to be admitted to citizenship upon petition, without any previous declaration of intention, and without having a longer residence in the United States than one year. Rev. St. § 2166 (U. S. Comp. St. 1916, § 4355), and section 2175.

[11] The treaty between the government of Austro-Hungary and the United States, cited by counsel for the petitioner, contains nothing in conflict with these rules of law. If it did, the later act of Congress would control, and international complications, if any, resulting therefrom, would be exclusively for the political departments of the government, and are not matters of judicial cognizance. Boudinot v. U. S., 11 Wall. 616, 620, 20 L. Ed. 227; Edye v. Robertson, 112 U. S. 580, 5 Sup. Ct. 247, 28 L. Ed. 798; Fong Yue Ting v. United States, 149 U. S. 698, 13 Sup. Ct. 1016, 37 L. Ed. 905; J. Ribas y Hijo v. United States, 194 U. S. 315, 24 Sup. Ct. 727, 48 L. Ed. 994.

[12] (3) Petitioner's contention that Hackenberg has now a right to refuse to be mustered into the military forces of the United States, under the draft order of July 10, 1917, and that until he does consent so to be mustered in he does not occupy the status of a soldier, and is not subject to be dealt with according to military law, is without foundation.

Section 58 of the National Defense Act provides that the National Guard shall consist of the regularly enlisted militia between the ages of 18 and 45 years, organized, armed, and equipped as provided by that act. Section 70 provides that enlisted men in the National Guard of the several states, then serving under enlistment contracts which contain an obligation to defend the Constitution of the United States and to obey the orders of the President of the United States, shall be recognized as members of that National Guard. This section further provides that, when the enlistment contract does not contain this obligation, the militiaman shall not be recognized as a member of the National Guard until he shall have signed an enlistment contract and taken and subscribed the oath therein provided. This oath is one to support and defend the Constitution of the United States and obey the orders of the President.

John Hackenberg's original enlistment contract, dated June 7, 1915, contains the obligation prescribed by section 70. In other words, he had taken the required oath. The adoption, therefore, of the National Defense Act, without anything more, made him a member of the Na-

tional Guard, and subject to the military control of the United States. Furthermore, on July 2, 1916, as already stated, when mobilized for service on the Mexican border, he took the additional oath prescribed by section 70. He served thereafter, and drew pay and clothing allowance, until mustered out of the federal service March 2, 1917. His status is thereby completely established as a member of the National Guard organized, armed, and equipped and controlled by the National Defense Act.

Section 111 further provides that, whenever Congress authorizes the use of the armed land forces of the United States for any purpose, the President may draft into the military service of the United States any or all members of the National Guard; also that all persons so drafted shall, from the date of their draft, stand discharged from the militia, and shall from said date be subject to the laws and regulations for the government of the army of the United States. Authority from Congress and a draft order from the President is all the the formality required to make him a soldier of the United States army. He becomes such from the date of the draft order. He is subject to be dealt with as a soldier in the United States army from the date when called into service, which in this case was July 10, 1917.

Furthermore, the act of May 18, 1917, entitled "An act authorizing the President to increase temporarily the military establishment of the United States," called the Selective Draft Law, confers this authority on the President. He is thereby authorized, in view of existing emergencies, to draft into the military service of the United States, in accordance with the provisions of section 111, of the National Defense Act, all members of the National Guard. His draft order, made pursuant to the authority of these two acts, constitutes John Hackenberg a soldier in the United States army; no further act on his part is required to make him subject to military trial or punishment. He stands from July 10, 1917, on the same basis as one called and accepted under the selective draft provisions of the same act, except that by his previous enlistment he has deprived himself of the exemption privileges accorded to persons called for the first time under that act. His failure to respond to the call would have made him liable to punishment as a deserter.

These conclusions follow from the plain language of the law. We are not, however, without pertinent authority. In Houston v. Moore, 5 Wheat. 1, 5 L. Ed. 19, the Supreme Court had under consideration a law drafting the militia of the state of Pennsylvania into the United States army, and the power and authority of Congress and the President under the Constitution was fully reviewed. All of the judges agreed that this power was practically unlimited; that the President, authorized by Congress, might call forth the militia, either by a requisition on the Governor of the state or by direct command to the officers and members of the militia; and that the officers and members of the militia might be made members of the United States army, subject to the orders of the government, and liable to be dealt with pursuant to the Articles of War, from the date of the draft order, or such other time, or under such other conditions as Congress and the President saw fit to impose.

In that case the majority of the court held that the act of Congress made the officers and members of the militia a part of the United States military forces from the time of their arrival at the appointed place of mobilization, whereas Mr. Justice Story was of opinion that this status was imposed from the date of receiving notice of the call; but all the judges agreed that it was competent to make the date of the call the time when the officers and members of the militia became subject to the military control of the United States.

Under Act July 17, 1862, c. 204, 12 Stat. 601, the militia of the several states were drafted into the military forces of the United States, and it was provided that any person failing to report at the place of rendezvous should be deemed a deserter, and might be arrested and sent to the nearest military post for trial by a court-martial. A militiaman failed to respond, and was charged as a deserter. Upon an application to District Judge Cadwallader for a writ of habeas corpus, it was held, on authority of Houston v. Moore, supra, that a member of the militia became a drafted soldier of the United States army from the date of the draft order, and was subject to be dealt with by a court-martial for an offense against the military laws of the United States. In re McCall, 15 Fed. Cas. 1225, No. 8,669.

[13] These cases fully sustain the views above expressed touching upon the force and effect of the National Defense Act and of the Selective Draft Law. They are authority for the proposition that a member of the National Guard becomes a part of the military force of the United States from the date of the draft order. They are also authority to sustain the power of Congress and the President thus to draft compulsorily into the service of the United States all officers and enlisted men of the National Guard. The power to raise, organize, and equip armies, and to provide for the common defense, conferred by the Constitution (article 1, § 8, cls. 10, 11, 12, 13, 14, 15, and 17; section 10, cl. 3) is practically unlimited. Any contention that compulsory service is in violation of the Constitution is utterly frivolous. See, also, In re Tarble, 13 Wall. 397, 20 L. Ed. 597; In re Grimley, 137 U. S. 147 (bottom p. 153) 11 Sup. Ct. 54, 34 L. Ed. 636; Kneedler v. Lane, 45 Pa. 238; Burroughs v. Peyton, 16 Grat. (Va.) 470; Boyse v. United States, 47 Ct. Cl. 333. In Burroughs v. Peyton will be found an exhaustive discussion of this question.

[14] (4) That Hackenberg has a mother, of whom he is the sole and only support, does not make void his contract for enlistment.

[15] Dependency of relatives is not made a ground of disability to enlistment, as is the case of infancy, over age, or alienage. Each applicant may determine this question for himself. He determines it when he applies for enlistment and is accepted. It may thereafter be a ground upon which a discharge may be granted at the discretion of the military authorities, but it does not create an infirmity in the contract of enlistment; much less does it make that contract void, so that he or the dependent relative may procure his discharge by a writ of habeas corpus. It is recognized by section 4 of the act of May 18, 1917, as a ground upon which the President may exclude or discharge, at his discretion, those in a status with respect to persons dependent

·upon them for support, which renders their exclusion or discharge ad-
visable. It is not a matter of which the courts can take judicial cog-
nizance.

For the foregoing reasons, I am of opinion that neither John Hack-
enberg nor his mother is entitled to the relief prayed for. The petition
will therefore be dismissed.