STATE EX REL. FRANCIS L. KLINGLE v. JOSEPH FISHER.[1]

March 9, 1928.

Nos. 26,430, 26,431.

**Questions reviewable in this case.**
    1. Where a summary court martial has convicted a member of the national guard of an offense against military law, the only questions reviewable by habeas corpus are whether the military court had jurisdiction over him and power to impose the penalty inflicted.

**Relator acquired status of a soldier, even if he did not take enlistment oath.**
    2. Where an applicant to enlist appeared before the recruiting officer, signed the enlistment contract, thereafter attended drill and received pay therefor, he acquired the status of a soldier although he may not have taken the enlistment oath.

**Membership in naval reserve did not relieve him from violations of military law.**
    3. The fact that he was a member of the naval reserve at the time of his enlistment did not render the enlistment void nor relieve him from liability for violations of military law, and the military tribunals had authority to punish therefor.

**Military authorities did not lose jurisdiction pending litigation.**
    4. Where he was arrested under G. S. 1923, § 2480, and sought to be released under a writ of habeas corpus served the same day, the military authorities did not lose jurisdiction by refraining from taking further action during the pendency of the habeas corpus proceeding.

Habeas Corpus, 29 C. J. p. 93 n. 67.
Militia, 40 C. J. p. 681 n. 58; p. 699 n. 8, 11.

Relator was convicted by the summary court of a national guard regiment for being absent without leave, a violation of G. S. 1923, § 2467(5) (the 61st article of war), and committed to the county jail in default of payment of a fine of $25. He procured a writ of habeas corpus from the district court for Steele county directed to

[1]Reported in 218 N. W. 542.

the sheriff thereof. Later he was arrested under an order made pursuant to G. S. 1923, § 2480, for the purpose of trial for absence from encampment. He procured a second writ of habeas corpus and was released on bail. Upon hearing both writs were discharged and the relator remanded to the custody of the sheriff. He appealed to this court from the orders, Senn, J. discharging the writs, where there was a trial de novo submitted on the record made in the court below. Writs discharged and relator remanded to the custody of the sheriff.

*Leach & Leach,* for relator.

*Frederic D. McCarthy* and *Harold S. Nelson,* for respondent.

TAYLOR, C.

The relator, alleged to be a member of company F, 135th infantry, Minnesota national guard, located at the city of Owatonna in Steele county, was convicted by a summary court martial of being absent from duty without leave and was sentenced to pay a fine of $25 or be committed to the county jail for a term of 25 days. He refused to pay the fine and was committed to the jail. Thereupon he procured a writ of habeas corpus from the district court of Steele county. That court discharged the writ and remanded him to the custody of the sheriff. He appealed. The cause is submitted to this court upon the record in the court below.

The only questions open for consideration under the writ are whether the military court had jurisdiction of the relator and, if so, whether under the law it had power to impose the sentence which it did impose. State ex rel. Madigan v. Wagener, 74 Minn. 518, 77 N. W. 424, 42 L. R. A. 749, 73 A. S. R. 369; In re Grimley, 137 U. S. 147, 11 S. Ct. 54, 34 L. ed. 636. That the sentence was within the power of the court to impose is not questioned.

The relator contends that he never enlisted or became a member of the national guard and that the military court had no jurisdiction over him for that reason. He admits that he went to the recruiting officer at the armory for the purpose of enlisting, there signed the enlistment contract and enlistment oath, and that thereafter he reported for and attended drill twice and received pay therefor

from the United States; but claims that the contract of enlistment does not become effective until the applicant takes the oath, and that although he signed the oath it was not read to him nor formally administered to him. The original enlistment paper is in evidence bearing his admitted signature at the bottom of the oath, and immediately below this is the certificate of the enlisting officer that the oath was subscribed and sworn to before him and was read to the relator before he subscribed to it. It will be presumed from this record that the oath was properly administered. But conceding that the usual formalities were omitted, as claimed by the relator, yet he must be held to have known that taking the oath was prescribed as a part of the act of enlisting. He was intelligent and had a high school education. He had previously enlisted in the naval reserve and had then taken the oath. He signed the oath in question in the presence of the recruiting officer for the purpose of completing his enlistment, and that officer signed the jurat to complete the act of taking the oath. This was sufficient to make it binding. State v. Madigan, 57 Minn. 425, 59 N. W. 490; State v. Day, 108 Minn. 121, 121 N. W. 611; Atwood v. Mississippi, 146 Miss. 662, 111 So. 865, 51 A. L. R. 836, and citations in note. Furthermore, even if he were not sworn, the fact that he signed the enlistment contract and oath and thereafter attended drill and received pay therefor was sufficient to establish his status as a soldier. In re Grimley, 137 U. S. 147, 11 S. Ct. 54, 34 L. ed. 636.

The relator presented evidence which shows that in April, 1925, he enlisted in the United States naval reserve for a term of four years, and that in August of that year, pursuant to such enlistment, he served for two weeks on the training ship Paducah on Lake Superior. At the close of this training period he returned to his home in Owatonna and, so far as appears, has performed no duties under his naval enlistment since that time. He insists that, having acquired the status of a sailor, he is not amenable to the articles of war and that a military court martial has no jurisdiction over him for that reason. This would doubtless be true if he were being tried for a violation of the duties and obligations resulting from his enlistment in the navy. But when he enlisted in the national

guard he made himself subject to the articles of war and brought himself within the jurisdiction of courts martial for offenses punishable under those articles.

He urges that a man cannot be both a sailor and a soldier at the same time; and that his status as a sailor is incompatible with his status as a soldier. This may be true and may render him liable to more serious charges than that now made against him; but it does not relieve him from his present predicament.

He claims in substance that his status as a sailor made him ineligible for enlistment as a soldier. We shall assume that enlistment in the naval reserve rendered him ineligible for enlistment in the national guard. Nevertheless he presented himself for enlistment and thereby represented himself as eligible to enlist, and also executed an enlistment contract which expressly states that he was not a member of either the military or naval forces. He claims he did not know it contained that statement. Having voluntarily enlisted in the national guard, he cannot relieve himself from liability for subsequent violations of the articles of war by showing that the naval reserve had a prior claim upon him. In re Carver (C. C.) 142 F. 623. The fact that he had previously enlisted in another service did not render his enlistment in the national guard void, and he was required to perform his military duties until released therefrom by a lawful discharge. In re Grimley, 137 U. S. 147, 11 S. Ct. 54, 34 L. ed. 636; In re Morrissey, 137 U. S. 157, 11 S. Ct. 57, 34 L. ed. 644; Ex parte Dostal (D. C.) 243 F. 664; Ex parte Hubbard (C. C.) 182 F. 76; Reed v. Cushman (C. C. A.) 251 F. 872; Ex parte Rock (C. C.) 171 F. 240; In re Carver (C. C.) 142 F. 623.

Of course there may be cases where an enlistment is void, as where the applicant was insane, an idiot or prohibited from enlisting by positive law. But where the enlistment is not void but at most only voidable, the military tribunals have jurisdiction to punish for infractions of the military laws and regulations; and where they are holding a soldier for trial for an offense against military law or have convicted him of such an offense, the civil courts will not take jurisdiction over him, by habeas corpus or otherwise, until he has been released from the proceedings pending before the military tri-

bunal. Dillingham v. Booker (C. C. A.) 163 F. 696, 18 L.R.A. (N.S.) 956, 16 Ann. Cas. 127; Ex parte Dunakin (D. C.) 202 F. 290; In re Miller (C. C. A.) 114 F. 838; Ex parte Rock (C. C.) 171 F. 240; In re Carver (C. C.) 142 F. 623; Ex parte Hubbard (C. C.) 182 F. 76; Ex parte Dostal (D. C.) 243 F. 664; In re Kaufman (C. C.) 41 F. 876; United States v. Reaves (C. C. A.) 126 F. 127.

Four days after the issuance of the first writ of habeas corpus the relator was arrested under a warrant issued by his commanding officer under G. S. 1923, § 2480, for failure to report for duty at the annual training encampment of the company then being held. On the same day he procured a second writ of habeas corpus from the district court of Steele county and was released on bail. The hearing under both writs was held at the same time and both were submitted upon the same evidence. The court made orders discharging both writs and remanding him to the custody of the sheriff. He appealed from both orders and submitted both cases to this court upon the same record and the same brief. But in the second case he makes the additional point that upon such an arrest the statute requires that charges and specifications shall be made and filed within 36 hours after the arrest and that this was not done. The writ of habeas corpus was issued and served on the same day on which he was arrested, and we cannot say that the military authorities lost jurisdiction by refraining from taking further action while their right to do so was being contested under the writ.

We reach the conclusion that both writs must be discharged. They are hereby discharged and the relator remanded to the custody of the sheriff.